PER CURIAM.
The Attorney General has requested this Court to review a proposed amendment to the Florida Constitution that would limit the contingency fee agreement between injured claimants and their attorneys in medical liability cases. We have jurisdiction. See art. IV, § 10; art V, § 3(b)(10), Fla. Const. For the reasons explained below, we approve the amendment and the ballot title and summary for placement on the ballot.
THE PROPOSED AMENDMENT AND BALLOT SUMMARY
The ballot title for the proposed amendment is “The Medical Liability Claimant’s Compensation Amendment.” The summary for the proposed amendment provides:
Proposes to amend the State Constitution to provide that an injured claimant who enters into a contingency fee agreement with an attorney in a claim for medical liability is entitled to no less than 70% of the first $250,000.00 in all damages received by the claimant, and 90% of damages in excess of $250,000.00, exclusive of reasonable and customary costs and regardless of the number of defendants. This amendment is intended to be self-executing.
The full text of the proposed amendment reads as follows:
Section 1.
Article 1, Section 26 is created to read “Claimant’s right to fair compensation.”
In any medical liability claim involving a contingency fee, the claimant is entitled to receive no less than 70% of the first $250,000.00 in all damages received by the claimant, exclusive of reasonable and customary costs, whether received by judgment, settlement, or otherwise, and regardless of the number of defendants. The claimant is entitled to 90% of all damages in excess of $250,000.00, exclusive of reasonable and customary costs and regardless of the number of defendants. This provision is self-executing and does not require implementing legislation.
Section 2.
This Amendment shall take effect on the day following approval by the voters.
STANDARD AND SCOPE OF REVIEW
In Advisory Opinion to the Attorney General re Amendment to Bar Government from Treating People Differently Based on Race in Public Education, 778 So.2d 888 (Fla.2000), this Court summarized its standard of review in initiative petition cases:
The Court’s inquiry, when determining the validity of initiative petitions, is limited to two legal issues: whether the petition satisfies the single-subject requirement of article XI, section 3, Florida Constitution, and whether the ballot titles and summaries are printed in clear and unambiguous language pursuant to section 101.161, Florida Statutes (1999). In order for the Court to invalidate a proposed amendment, the record must show that the proposal is clearly and conclusively defective on either ground. In determining the propriety of the ini *677 tiative petitions, the Court does not review the merits of the proposed amendments.
Id. at 890-91 (citations omitted).
SINGLE-SUBJECT REQUIREMENT
Article XI, section 3 of the Florida Constitution provides in pertinent part that proposed amendments based on citizen initiative petitions “shall embrace but one subject and matter directly connected therewith.” This Court has held that the single-subject requirement serves the following purposes: (1) it prevents “logrolling,” a practice that combines separate issues into a single proposal to secure passage of an unpopular issue; and (2) it “prevent[s] a single constitutional amendment from substantially altering or performing the functions of multiple aspects of government.” Advisory Opinion to the Attorney Gen. re Florida Transp. Initiative for Statewide High Speed Monorail, Fixed Guideway or Magnetic Levitation Sys., 769 So.2d 367, 369 (Fla.2000). A proposed amendment must manifest a “logical and natural oneness of purpose” in order to satisfy the single-subject requirement. Fine v. Firestone, 448 So.2d 984, 990 (Fla.1984). This determination requires the Court to consider whether the proposed amendment affects separate functions of government, as well as how it affects other provisions of the constitution. See In re Advisory Opinion to the Attorney Gen.-Restricts Laws Related to Discrimination, 632 So.2d 1018, 1020 (Fla. 1994).
The amendment’s opponents assert that the proposed amendment would have a “precipitous” and “cataclysmic” effect on multiple branches of state government. The opponents argue that the amendment therefore improperly affects separate functions of government and portions of the Florida Constitution. Specifically, the opponents allege that the amendment’s ambiguous wording will impact the judiciary’s involvement in regulating attorneys and the fees they charge.
While we find the proposed amendment at bar to be extremely brief, we also find its language to be straightforward as to who it affects or who is involved in its implementation. See Advisory Opinion to the Attorney Gen. re Right of Citizens to Choose Health Care Providers, 705 So.2d 563, 565-66 (Fla.1998) (“[I]t is imperative that an initiative identify the provisions of the constitution substantially affected by the proposed amendment in order for the public to fully comprehend the contemplated changes and to ensure that the initiative’s effect on other unnamed provisions is not left unresolved and open to various interpretations.”). We agree that the amendment does relate to the judicial branch because at the very least, the amendment would functionally override or interfere with the Rules of Professional Conduct as they relate to fee contracts between attorneys and their clients. See R. Regulating Fla. Bar 4-1.5. However, beyond the aforementioned effect, the amendment does not substantially alter or perform the functions of multiple branches of government or the constitution. Further, to expand our consideration to the merits of the amendment would go beyond this Court’s scope in giving proposed amendment advisory opinions. See In re Advisory Opinion to Attorney General ex rel. Authorizes Miami Dade And Broward County Voters To Approve Slot Machines In Parimutuel Facilities, 880 So.2d 522, 523, 2004 WL 1064930 (Fla. May 13, 2004) (“[T]he Court does not review the merits or the wisdom of the proposed amendment.”).
We likewise find no merit in the arguments that the amendment should be stricken from the ballot on the basis that it *678 violates the single-subject requirement because the Judiciary and the Legislature would be burdened with having to interpret and define the amendment’s terms. The proposed amendment has a limited scope because it involves contractual fee agreements between attorneys and clients, which do not inherently involve the executive or legislative branches.
Although the proposed amendment logically relates to the judicial branch and could possibly result in some collateral ramifications for the other two branches, the proposal will not substantially alter or perform the functions of those branches. “[T]he possibility that an amendment might interact with other parts of the Florida Constitution is not sufficient reason to invalidate the proposed amendment.” Advisory Opinion to the Attorney Gen.—Fee on Everglades Sugar Prod., 681 So.2d 1124, 1128 (Fla.1996) (quoting Advisory Opinion to the Attorney Gen. re Limited Casinos, 644 So.2d 71, 74 (Fla.1994)). Likewise, “[a] proposal that affects several branches of government will not automatically fail.” Advisory Opinion to Atty. Gen. re Fish & Wildlife Conservation Comm’n, 705 So.2d 1351, 1353-54, (Fla.1998). Rather, “it is when a proposal substantially alters or performs the functions of multiple branches that it violates the single-subject test.” Id. at 1354. See also Advisory Opinion To Atty. Gen. re Right to Treatment and Rehabilitation, 818 So.2d 491, 496 (Fla.2002) (“[T]he proposed amendment may ‘affect’ several branches of government but it does not substantially ‘alter’ or ‘perform’ the functions of those branches.”).
The opponents also argue that the amendment impermissibly affects portions of the Florida Constitution, specifically article I, sections 2 and 10. See Art. I, § 10, Fla. Const. (“No bill of attainder, ex post facto law or law impairing the obligation of contracts shall be passed.”). However, we are not persuaded by the argument that the amendment affects portions of the Florida Constitution prohibiting the impairment of citizens’ contract rights because it does not propose to transcend similar limitations on attorney-client fee arrangements that are currently in place. See R. Regulating Fla. Bar 4-1.5. As previously discussed, the proposed amendment could impact the relevant Rules of Professional Conduct, but it does not appear to otherwise have a wide-reaching impact on other constitutional provisions.
Thus, we conclude that the amendment, as proposed, does not violate the single-subject requirement.
REVIEW OF BALLOT TITLE AND SUMMARY
Section 101.161(1) of the Florida Statutes governs the requirements for ballot titles and summaries and provides, in relevant part:
Whenever a constitutional amendment or other public measure is submitted to the vote of the people, the substance of such amendment or other public measure shall be printed in clear and unambiguous language on the ballot....
§ 101.161(1), Fla. Stat. (2003). Thus, the statute requires that the ballot title and summary “state in clear and unambiguous language the chief purpose of the measure.” Advisory Opinion to the Attorney Gen. — Limited Political Terms in Certain Elective Offices, 592 So.2d 225, 228 (Fla.1991); accord Right of Citizens to Choose Health Care Providers, 705 So.2d at 566. Above all, the title and summary must be accurate and informative. See Advisory Opinion to the Attorney Gen. re Term Limits Pledge, 718 So.2d 798, 803 (Fla.1998). These requirements make certain that the “electorate is advised of the true meaning, and ramifications, of an amend *679 ment.” Advisory Opinion to the Attorney Gen. re Tax Limitation, 644 So.2d 486, 490 (Fla.1994) (quoting Askew v. Firestone, 421 So.2d 151, 156 (Fla.1982)).
This Court has concluded that the purpose of ballot title and summary statute was “to provide fair notice of the content of the proposed amendment so that the voter will not be misled as to its purpose, and can cast an intelligent and informed ballot.” Term Limits Pledge, 718 So.2d at 803 (quoting Right of Citizens to Choose Health Care Providers, 705 So.2d at 566). In sum, it is this Court’s “responsibility ... to determine whether the language of the title and summary, as written, misleads the public.” Right of Citizens to Choose Health Care Providers, 705 So.2d at 566. “When the summary of a proposed amendment does not accurately describe the scope of the text of the amendment, it fails in its purpose and must be stricken.” Term Limits Pledge, 718 So.2d at 804.
In Right of Citizens to Choose Health Care Providers, this Court struck an amendment from the ballot because there were discrepancies between the amendment and the summary that were “material and misleading.” 705 So.2d at 566. The Court described such ambiguity as being a “divergence in terminology” and found that it caused the amendment to be “fatally defective.” Id. However, in the proposed amendment before us, we do not find material or misleading discrepancies between the summary and the amendment. In fact, the summary in this amendment comes very close to reiterating the briefly worded amendment.
We also note that it is not necessary for the title and summary to explain every detail or ramification of the proposed amendment. See Advisory Opinion to the Attorney Gen. re Prohibiting Public Funding of Political Candidates’ Campaigns, 693 So.2d 972, 975 (Fla.1997). Even the terms “claim for medical liability” and “medical liability claim” do not represent a discrepancy between the amendment and summary because those terms are used consistently between the summary and the amendment. Although the opponents argue that the efficacy of the amendment is at issue because of the vague “medical liability” term, the issue as to the precise meaning of this term is better left to subsequent litigation, should the amendment pass. Under the scope of our review, we find the wording of the title and summary sufficient to communicate the chief purpose of the measure. Thus, we conclude that the ballot summary explains the “chief purpose” of the proposed amendment and meets the statutory requirements of section 101.161(1), Florida Statutes.
CONCLUSION
For the reasons stated, we hold that the initiative petition and proposed ballot title and summary for “The Medical Liability Claimant’s Compensation Amendment” meet the legal requirements of article XI, section 3 of the Florida Constitution, and section 101.161(1), Florida Statutes (2003). We therefore approve the amendment for placement on the ballot. We note, however, that no other issue is addressed here and this opinion should not be construed as expressing either favor for or opposition to the proposed amendment.
It is so ordered.
PARIENTE, C.J., and WELLS, QUINCE, CANTERO, and BELL, JJ., concur.
PARIENTE, C.J., concurs with an opinion, in which QUINCE, J., concurs.
LEWIS, J., dissents with an opinion, in which ANSTEAD, J., concurs.