926 So.2d 1229 (2006)
ADVISORY OPINION TO THE ATTORNEY GENERAL RE FLORIDA MARRIAGE PROTECTION AMENDMENT.
Nos. SC05-1563, SC05-1831.
Supreme Court of Florida.
March 23, 2006.
*1232 Charles J. Crist, Jr., Attorney General, Tallahassee, FL, for Petitioner.
Mathew D. Staver and Anita L. Staver of Liberty Counsel, Maitland, FL, Erik W. Stanley, Rena M. Lindevaldsen and Mary E. McAlister of Liberty Counsel, Lynchburg, VA, for Florida4Marriage.org, Sponsors.
Leslie Cooper, New York, NY, Randall C. Marshall, Miami, FL, Rebecca Harrison Steele, Tampa, FL, and Karen Marie Doering, St. Petersburg, FL, on behalf of Richard Nolan and Robert Pingpank, Robert Sullivan and Jon Durre, Dee Graham and Signa Quandt, Richard Rogers and Bill Mullins, Teresa Ardines and Melissa Bruck, Juan Talavera and Jeffrey Ronci, American Federation of State, County and Municipal EmployeesAFL-CIO, the ACLU of Florida, and Equality Florida, for Opponents.
LEWIS, J.
The Attorney General has requested that we review the text of a proposed amendment to the Florida Constitution to determine compliance with article XI, section 3 of the Florida Constitution, and to consider whether the proposed ballot title and summary are within the requirements of section 101.161 of the Florida Statutes (2005). In addition, the Attorney General has requested that we review the corresponding Financial Impact Statement to evaluate compliance with section 100.371 of the Florida Statutes (2005). We have jurisdiction. See art. IV, § 10, art. V, § 3(b)(10), Fla. Const.

THE PROPOSED AMENDMENT AND BALLOT SUMMARY
Florida4Marriage.org, a Florida volunteer organization, has invoked the citizen initiative process of article XI, section 3 of the Florida Constitution in proposing a constitutional amendment directed to defining marriage as the union of one man and one woman while prohibiting any other legal union that is treated as marriage, or the substantial equivalent thereof, from being valid or recognized in Florida. The full text of the proposed amendment states:
BE IT ENACTED BY THE PEOPLE OF FLORIDA THAT:
A new section for Article I is hereby created to add the following: Inasmuch as marriage is the legal union of only one man and one woman as husband and wife, no other legal union that is treated as marriage or the substantial equivalent thereof shall be valid or recognized.
The ballot title for the proposed initiative is:
Florida Marriage Protection Amendment.
The proposed summary to be placed on the ballot for this amendment reads:
This amendment protects marriage as the legal union of only one man and one woman as husband and wife and provides that no other legal union that is treated as marriage or the substantial equivalent thereof shall be valid or recognized.
*1233 The sponsor of the amendment, Florida4Marriage.org, has submitted a brief in support of the proposed amendment. The ACLU Foundation and the ACLU Foundation of Florida have each submitted briefs in opposition. Two very limited issues are now before this Court for consideration.

STANDARD OF REVIEW
In our decision in Advisory Opinion to the Attorney General re Amendment to Bar Government from Treating People Differently Based on Race in Public Education, 778 So.2d 888 (Fla.2000), we reiterated the standard of review applicable to initiative petition cases:
The Court's inquiry, when determining the validity of initiative petitions, is limited to two legal issues: whether the petition satisfies the single-subject requirement of article XI, section 3, Florida Constitution, and whether the ballot titles and summaries are printed in clear and unambiguous language pursuant to section 101.161, Florida Statutes (1999).
Treating People Differently Based on Race in Public Educ., 778 So.2d at 890. When addressing these two limited issues, our inquiry is governed by several general principles. First, we will not address the merits or wisdom of the proposed amendment. Id. at 891. Second, we have recognized that we "must act with extreme care, caution, and restraint before [we] remove[] a constitutional amendment from the vote of the people." Askew v. Firestone, 421 So.2d 151, 156 (Fla.1982). In elaborating on this latter principle, we have noted that "the Court has no authority to inject itself in the process, unless the laws governing the process have been `clearly and conclusively' violated." Advisory Opinion to the Attorney Gen. re Right to Treatment & Rehab. for Non-Violent Drug Offenses, 818 So.2d 491, 498-99 (Fla.2002). It is within the framework of these fundamental principles that we review this proposed amendment and ballot language.

SINGLE SUBJECT REQUIREMENT
Article XI, section 3 of the Florida Constitution provides in pertinent part:
The power to propose the revision or amendment of any portion or portions of this constitution by initiative is reserved to the people, provided that, any such revision or amendment, except for those limiting the power of government to raise revenue, shall embrace but one subject and matter directly connected therewith.

Art. XI, § 3, Fla. Const. (emphasis supplied). This constitutional limitation exists, at least in part, because the citizen initiative process does not afford the same opportunity for hearing and public debate that may accompany the other forms of constitutional proposal and drafting processes (i.e., proposal by the Legislature, a constitutional revision commission, and a constitutional convention). See Advisory Opinion to the Attorney Gen. re Fish & Wildlife Conservation Comm'n, 705 So.2d 1351, 1353 (Fla.1998). A proposed amendment must manifest "a logical and natural oneness of purpose" to accomplish the purpose of article XI, section 3. Fine v. Firestone, 448 So.2d 984, 990 (Fla.1984). We have held that this single subject limitation serves two distinct purposes: "(1) it prevents `logrolling,' a practice that combines separate issues into a single proposal to secure passage of an unpopular issue; and (2) it `prevent[s] a single constitutional amendment from substantially altering or performing the functions of multiple aspects of government.'" Advisory Opinion to the Attorney Gen. re the Med. Liab. Claimant's Comp. Amendment, 880 So.2d 675, 677 (Fla.2004) (quoting Advisory Opinion to the Attorney Gen. re Fla. *1234 Transp. Initiative for Statewide High Speed Monorail, Fixed Guideway or Magnetic Levitation Sys., 769 So.2d 367, 369 (Fla.2000)).

Logrolling
In addressing the "logrolling" aspect of the single-subject rule we have stated that "[a] proposed amendment meets this test when it `may be logically viewed as having a natural relation and connection as component parts or aspects of a single dominant plan or scheme. Unity of object and plan is the universal test.'" Advisory Opinion to the Attorney Gen. re Additional Homestead Tax Exemption, 880 So.2d 646, 649 (Fla.2004) (quoting City of Coral Gables v. Gray, 154 Fla. 881, 19 So.2d 318, 320 (1944)). The opponents here contend that the proposed amendment presents a classic example of the prohibited practice of logrolling because this proposal combines separate subjects in a single amendment. Specifically, the opponents assert that the amendment impermissibly requires the voters to accept part of the proposed amendment which polling has shown a majority of voters opposeprohibiting alternative forms of legal recognition and protection for relationships of same-sex couplesto obtain a change which a majority has been shown to favorlimiting the right to marry to opposite-sex couples. In response, the sponsor of the proposed amendment contends that the amendment only addresses the singular objective of preserving marriage by clarifying that marriage is the legal union of only one man and one woman as husband and wife and that no other legal unions that are treated as marriage or the substantial equivalent thereof will be recognized as marriage in Florida.
We are persuaded by the argument of the sponsor that no constitutional violation exists with the proposed amendment. The particular language challenged by the opponents is found in the second clause of the proposed amendment and reads: "[N]o other legal union that is treated as marriage or the substantial equivalent thereof shall be valid or recognized." The opponents claim that this language is beyond the subject of the definition of marriage by including a bar to legal unions which provide the benefits and obligations of marriage although under a different name and, therefore, this proposed amendment improperly logrolls these legal unions and the definition of marriage into the same amendment. When the phrase challenged by the opponents is read in context and connection with the proposed amendment as a whole, it is clear that it "may be logically viewed as having a natural relation and connection as component parts or aspects of a single dominant plan or scheme"the restriction of the exclusive rights and obligations traditionally associated with marriage to legal unions consisting of one man and one woman as husband and wife. Additional Homestead Tax Exemption, 880 So.2d at 649. The proposed amendment does not impermissibly force voters to approve a portion of the proposal which they oppose to obtain a change which they support. Rather, the voter is merely being asked to vote on the singular subject of whether the concept of marriage and the rights and obligations traditionally embodied therein should be limited to the union of one man and one woman. The plain language of the proposed amendment is clear that the legal union of a same-sex couple that is not the "substantial equivalent" of marriage is not within the ambit of this constitutional provision. Therefore, we conclude that the proposed amendment does not violate the single-subject rule by engaging in impermissible logrolling.

Altering or Performing the Functions of Multiple Branches of Government
The analysis to be applied when determining whether a proposed amendment *1235 alters or performs the functions of multiple branches of government is a functional rather than a locational analysis. See Fine, 448 So.2d at 990. Further clarifying this analysis, it must be noted that "[a] proposal that affects several branches of government will not automatically fail; rather, it is when a proposal substantially alters or performs the functions of multiple branches that it violates the single-subject test." Advisory Opinion to the Attorney Gen. re Fish & Wildlife Conservation Comm'n, 705 So.2d at 1353-54. This portion of the single-subject rule operates to prevent "precipitous and cataclysmic change in state government." Right to Treatment & Rehab. for Non-Violent Drug Offenses, 818 So.2d at 495. Although neither opponent of this proposed amendment has advanced an argument that it violates this portion of the single-subject analysis, we must complete our constitutional responsibility. We conclude that this proposed amendment would not operate to substantially alter or perform the functions of multiple branches of government.
Initially, a comparison of the proposed amendment with current law in section 741.212 of the Florida Statutes (2005), demonstrates that the amendment essentially tracks the language of the current statutory provision. Section 741.212, in pertinent part, reads:
(1) Marriages between persons of the same sex entered into in any jurisdiction,... or relationships between persons of the same sex which are treated as marriages in any jurisdiction, ... are not recognized for any purpose in this state.
(2) The state, its agencies, and its political subdivisions may not give effect to any public act, record, or judicial proceeding of any state, territory, possession, or tribe of the United States or of any other jurisdiction, either domestic or foreign, or any other place or location respecting either a marriage or relationship not recognized under subsection (1) or a claim arising from such a marriage or relationship.
(3) For purposes of interpreting any state statute or rule, the term "marriage" means only a legal union between one man and one woman as husband and wife, and the term "spouse" applies only to a member of such a union.
§ 741.212, Fla. Stat. (2005). The proposed amendment is essentially inserting this statutory scheme into the constitution with language substantially similar to the statutory provision itself. Therefore, it cannot be said that the proposed amendment would substantially alter the function of any branch of government as the State is currently applying section 741.212. Although the proposed amendment may perform a function of the Legislature by implementing a public policy decision of statewide significance, it most certainly would not act to perform the functions of any other branch of government and, therefore, would not impermissibly alter or perform the function of multiple branches of government.
The foregoing analysis causes us to conclude that the proposed amendment satisfies the single-subject requirement of article XI, section 3 of the Florida Constitution.

REVIEW OF BALLOT TITLE AND SUMMARY
Section 101.161 of the Florida Statutes (2005), provides the requirements for the ballot title and summary of proposed constitutional amendments. The statutory provision requires, in pertinent part:
Whenever a constitutional amendment or other public measure is submitted to the vote of the people, the substance of *1236 such amendment or other public measure shall be printed in clear and unambiguous language on the ballot.... Except for amendments and ballot language proposed by joint resolution, the substance of the amendment or other public measure shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure.... The ballot title shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of.
§ 101.161(1), Fla. Stat. (2005).
This Court has explained this statutory provision, noting:
"[S]ection 101.161 requires that the ballot title and summary for a proposed constitutional amendment state in clear and unambiguous language the chief purpose of the measure." Askew v. Firestone, 421 So.2d 151, 154-55 (Fla. 1982). This is so that the voter will have notice of the issue contained in the amendment, will not be misled as to its purpose, and can cast an intelligent and informed ballot. Id. at 155. However, "[i]t is not necessary to explain every ramification of a proposed amendment, only the chief purpose." Carroll v. Firestone, 497 So.2d 1204, 1206 (Fla.1986).
In re Advisory Opinion to the Attorney Gen.Save Our Everglades, 636 So.2d 1336, 1341 (Fla.1994). The proper analysis to assess whether a proposed amendment's ballot title and summary meet this requirement focuses on two questions: (1) whether the ballot title and summary, in clear and unambiguous language, fairly inform the voter of the chief purpose of the amendment; and (2) whether the language of the title and summary, as written, misleads the public. See Additional Homestead Tax Exemption, 880 So.2d at 651-52 (citing Right to Treatment & Rehab. for Non-Violent Drug Offenses, 818 So.2d at 498-99; Advisory Opinion to Attorney Gen. re Right of Citizens to Choose Health Care Providers, 705 So.2d 563, 566 (Fla. 1998)).
The opponents of this proposed amendment assert that reference to "no other legal union that is treated as marriage or the substantial equivalent thereof" in the summary fails to satisfy the "clear and unambiguous" requirement because no definition is given as to what constitutes the "substantial equivalent" of marriage. The opponents rely upon the decisions of this Court in Advisory Opinion to the Attorney General re People's Property Rights Amendments, 699 So.2d 1304 (Fla. 1997), and Advisory Opinion to the Attorney General re Amendment to Bar Government from Treating People Differently Based on Race in Public Education, 778 So.2d 888 (Fla.2000), as support for the position. However, we conclude that these cases relied upon by the opponents are clearly distinguishable and are not controlling.
In Treating People Differently Based on Race in Public Education, we addressed a proposed amendment that purported to bar differential treatment based on race, color, ethnicity, and national origin in the areas of public education, employment, and contracting. See id. at 889. In our analysis, we recognized that the terminology employed in the ballot title and summary was different from that appearing in the actual text of the proposed amendment. See id. at 897. We noted that the ballot title and summary referred to "people," whereas the text of the proposed amendment referred to "persons." See id. at 896. We held that "the divergent terminology create[d] a discrepancy as to whether the proposed amendments' proscriptions appl[ied] to corporations" due to the differing legal definitions of the respective terms. Id. at 897. In addition, the *1237 ballot summaries did not define the terms "otherwise lawful classification," or "bona fide qualifications based on sex." See id. at 898-99. As a result, we held that the lack of a fundamental definition for these multiple legal phrases would not adequately inform voters of the legal significance and the full effect of the proposed amendment. See id. at 899. Given our determination that the proposed amendment failed to adequately define terms and utilized inconsistent terminology, we concluded that the proposed amendment should not be placed on the ballot. See id. at 899-900.
The ballot language we consider here presents a different scenario from that addressed in Treating People Differently Based on Race in Public Education. Initially, the ballot title and summary being reviewed today do not impermissibly employ terminology divergent from that contained in the text of the actual proposed amendment. A comparison of the language of this ballot title and summary with the actual proposed amendment reveals that the language submitted for placement on the ballot contains language that is essentially identical to that found in the text of the actual amendment. Moreover, the terminology challenged by the opponents"marriage or the substantial equivalent thereof"is not within the field of undefined legal phrases with which the Court was concerned in Treating People Differently Based on Race in Public Education. The terminology here, "substantial equivalent," is a phrase which is used both in the proposed amendment and the summary, that is frequently used and understood by the common voter, and which does not require special training in the legal profession to comprehend its meaning. The plain meaning of these words, according to dictionary definition, is clear that the chief purpose of this amendment is to ensure that that unions between same-sex couples that are treated virtually identically to marriage will not be recognized in Florida. See Merriam Webster's Collegiate Dictionary, 1174, 393 (10th ed. 1998) ("Substantial ...: 1a: consisting of or relating to substance"; "Equivalent ... 3: corresponding or virtually identical"). Based on these clear distinctions, we conclude that our decision in Treating People Differently Based on Race in Public Education is inapplicable to this proposed amendment and, therefore, does not support the proposition that it cannot be placed on the ballot.
Our decision in Advisory Opinion to the Attorney General re Property Rights is also inapposite. In Advisory Opinion to the Attorney General re Property Rights, the Attorney General requested that we review three proposed amendments to ensure compliance with applicable law. See 699 So.2d at 1306. After reviewing all three proposed amendments, we determined that none satisfied the requirements of section 101.161 of the Florida Statutes, and concluded that all three should not appear on the ballot. See id. at 1312. In so holding, we noted that the divergence in terminology between the ballot title and summary in one of the amendments would be confusing to the voter. See id. at 1308. Additionally, we were concerned that the legal phrases "common law nuisance," "loss in fair market value," and "exemption" were not defined, and that this lack of definition created uncertainty as to the actual effect of the proposed amendments. Id. at 1309, 1312. Moreover, we noted that the language of one of the amendments submitted for review was misleading because its definition of a new tax as "increases in tax rates ... d[id] not distinguish between an increase in ... money paid ... or the actual [tax] rate." Id. at 1311.
*1238 The ballot title and summary before us today do not suffer from the same deficiencies as those we reviewed in Advisory Opinion to the Attorney General re Property Rights, and, therefore, our holding therein does not control the outcome of this action. Unlike the ballot summaries in Advisory Opinion to the Attorney General re Property Rights, there is no divergence in terminology either between the ballot title and summary, or between the ballot summary and the language of the actual amendment. In addition, the type of undefined legal terminology with which we were concerned in Advisory Opinion to the Attorney General re Property Rights is simply not present in this ballot title and summary. The factors presented in this proposed amendment are distinguishable from those which were before the Court in Advisory Opinion to the Attorney General re Property Rights and Treating People Differently Based on Race in Public Education, and, therefore, those decisions are not controlling in the present case.
The ballot title and summary here are more analogous to those we approved in our decision in Advisory Opinion to the Attorney General re the Medical Liability Claimant's Compensation Amendment, 880 So.2d 675 (Fla.2004). In Medical Liability Claimant's Compensation Amendment, we reviewed the propriety of a ballot title and summary for a proposed amendment that purported to limit contingency fees available in medical malpractice actions. See id. at 676. In holding that the proposed amendment satisfied the applicable requirements of the law, we noted that there was no divergence in terminology between the summary and amendment, and that, similar to the summary and amendment here, the summary "c[ame] very close to reiterating the briefly worded amendment." Id. at 679. Further, in Medical Liability Claimant's Compensation Amendment, we held that the lack of a definition of the term "medical liability" in the phrase "claim for medical liability" was not fatal because the "issue as to the precise meaning of this term [wa]s better left to subsequent litigation, should the amendment pass." Id. Finally, the language of the ballot title and summary here adequately inform the voter of the proposed amendment's chief purposelimiting marriage to the legal union of only one man and one woman. Based on the foregoing, we conclude that the ballot title and summary for this proposed amendment fulfill the requirement of informing the voter of the chief purpose of the amendment in a clear and unambiguous manner.
In addition to the above analysis, we have also cautioned that a ballot title and summary should be reviewed to ensure that they "tell the voter the legal effect of the amendment, and no more." Evans v. Firestone, 457 So.2d 1351, 1355 (Fla.1984). Political rhetoric in a ballot title and summary that invites an emotional response from voters as opposed to providing only a synopsis of a proposed amendment is improper. See Additional Homestead Tax Exemption, 880 So.2d at 653-54; Save Our Everglades, 636 So.2d at 1341-42. The opponents of the proposed amendment assert that use of the terms "protect" and "protection" in the ballot title and summary constitutes political rhetoric and, therefore, misleads the voter by inviting an emotional response in violation of these principles. However, contrary to this assertion, a review of the relevant case law demonstrates that the instant ballot title and summary do not constitute impermissible political or emotional rhetoric.
The opponents direct attention to our decision in Save Our Everglades, 636 So.2d 1336 (Fla.1994), as support for the contention that the current ballot title and summary *1239 constitute political rhetoric. In Save Our Everglades, we concluded that the ballot title and summary at issue did not satisfy the requirements of section 101.161 of the Florida Statutes. See id. at 1341-42. In reaching this conclusion, we held that the ballot title, "Save Our Everglades," misled the voter because it implied that "the Everglades is lost, or in danger of being lost, to the citizens of our State, and needs to be `saved'" while "nothing in the text of the proposed amendment hints at this peril." Id. at 1341. We noted that the text of the actual amendment stated that the purpose of the amendment was to "restore" the Everglades and did not include the term "save." See id. Therefore, we determined that the emotional language included in the ballot title could mislead voters as to the contents and purpose of the amendment. See id. In addition, we held the summary to be misleading because it created the impression that entities other than the sugarcane industry would be sharing the cleanup expense while the amendment's text did not support that conclusion. See id.
Decisions from this Court subsequent to Save Our Everglades demonstrate that our holding there has no application in the present matter. In Advisory Opinion to Attorney General re Protect People From the Health Hazards of Second-Hand Smoke by Prohibiting Workplace Smoking, 814 So.2d 415 (Fla.2002), we reviewed the following ballot title and summary:
Ballot title: Protect People from the Health Hazards of Second Hand Tobacco Smoke by Prohibiting Workplace Smoking.
Ballot summary: To protect people from the health hazards of second-hand tobacco smoke, this amendment prohibits tobacco smoking in enclosed indoor workplaces. Allows exceptions for private residences except when they are being used to provide commercial child care, adult care or health care. Also allows exceptions for retail tobacco shops, designated smoking guest rooms at hotels, and other public lodging establishments, and standalone bars. Provides definitions, and requires the legislature to promptly implement this amendment.
Id. at 416. In rejecting the assertion that the ballot title and summary there contained terms constituting impermissible political rhetoric, we noted that the title and summary did "not rise to a comparable level of political and emotional language and subjective evaluation as the language we rejected in Save Our Everglades." Workplace Smoking, 814 So.2d at 420. In so holding, we reasoned that the proposal did not utilize emotional terms such as "save" in the ballot title and summary while employing more docile terminology such as "restore" in the amendment text. See id. at 421. We specifically addressed use of the term "protect" in the ballot title and summary, and rejected the challenger's analogy to the use of the term "save" that was rejected in Save Our Everglades, noting that the "use of the term `protect' d[id] not constitute impermissible political rhetoric or the adjudication of a fact." Workplace Smoking, 814 So.2d at 421. We recognized that we had approved prior ballot titles and summaries containing the term "protect," and stated that we were "unable to discern the logic as to how the application of essentially the same term" could be acceptable in one case and unacceptable in another. Id.; see also Advisory Opinion to the Attorney Gen. re Pub. Prot. from Repeated Med. Malpractice, 880 So.2d 667 (Fla.2004) (holding that the use of the term "protection" in the ballot title did not constitute impermissible political or emotional rhetoric).
Our analysis in the Workplace Smoking and Medical Malpractice decisions is directly *1240 applicable here, and supports our conclusion that the language of the ballot title and summary do not constitute political or emotional rhetoric. Moreover, the common definition of the term "protect" is "to maintain the status or integrity of." Merriam Webster's Collegiate Dictionary 938 (10th ed.1998). This common definition, when read in context and conjunction with the rest of the language contained in the ballot title and summary accurately portrays the chief purpose of the amendmentpreserving the current concept of marriage in Florida as the legal union of one man and one woman. Based on the foregoing, we hold that the ballot summary and title in the instant proposal are not impermissibly misleading, nor are they "clearly and conclusively defective." Askew, 421 So.2d at 154 (holding that language in a citizen initiative must be clearly and conclusively defective to justify removal of the measure from the ballot).

REVIEW OF FINANCIAL IMPACT STATEMENT
Article XI, section five of the Florida Constitution provides in pertinent part:
(c) The legislature shall provide by general law, prior to the holding of an election pursuant to this section, for the provision of a statement to the public regarding the probable financial impact of any amendment proposed by initiative pursuant to section 3.
Art. XI, § 5(c), Fla. Const. Pursuant to this constitutional section, the Legislature has enacted section 100.371(6), which provides in relevant part:
(6)(a) ... [T]he Financial Impact Estimating Conference shall complete an analysis and financial impact statement to be placed on the ballot of the estimated increase or decrease in any revenues or costs to state or local governments resulting from the proposed initiative....
....
3.... Any financial impact statement that a court finds not to be in accordance with this section shall be remanded solely to the Financial Impact Estimating Conference for redrafting. The Financial Impact Estimating Conference shall redraft the financial impact statement within 15 days.
4. If the members of the Financial Impact Estimating Conference are unable to agree on the statement required by this subsection, or if the Supreme Court has rejected the initial submission... and no redraft has been approved by the Supreme Court by 5 p.m. on the 75th day before the election, the following statement shall appear on the ballot pursuant to s. 101.161(1): "The financial impact of this measure, if any, cannot be reasonably determined at this time."
§ 100.371(6)(a)-(b), Fla. Stat. (2005).
The financial impact statement ("FIS") submitted for the "Florida Marriage Protection Amendment" reads as follows:
The direct financial impact this amendment will have on state and local government revenues and expenditures cannot be determined, but is expected to be minor.
We conclude that the language of the proposed FIS does not violate the applicable statutory and constitutional requirements and, therefore, approve its placement on the ballot. Although the FIS does not state with particularity any increase or decrease in revenues or costs to state or local government that the proposed amendment might have, it does make it clear that the financial impact "cannot be determined, but is expected to be minor."
*1241 Subsection (6)(b)(4) of section 100.371 of the Florida Statutes states that if a FIS cannot be agreed upon by the Financial Impact Estimating Conference ("FIEC"), or if this Court has rejected an FIS and no redraft has been submitted, then the following language is to be place on the ballot: "The financial impact of this measure, if any, cannot be determined at this time." § 100.371(6)(b)(4), Fla. Stat. (2005). The FIS here essentially tracks this statutory language by informing the voter that the financial impact of this proposed amendment cannot be determined. The FIS then goes further by informing the voter that although the impact cannot be determined, any impact that may occur is expected to be minor. The language of the proposed FIS does not attempt to editorialize or sway the voter by the inclusion of emotional or political rhetoric. Rather, the FIS informs the voter in plain language that the FIEC was unable to determine the financial impactone result that is contemplated by the statutory scheme regulating this required statement in Florida. Moreover, a review of the financial information statement accompanying the FIS, which is available to voters at each polling location, at the main office of the supervisor of elections, and on the internet, see § 100.371(6)(d)(4)-(5), Fla. Stat. (2005), reveals that the FIEC clearly complied with section 100.371 of the Florida Statutes in completing its analysis of the financial impact of the proposed amendment. The fact that the FIEC is unable to discern the actual financial impact does not render a proposed FIS in violation of applicable law when those laws in fact contemplate such a scenario. See § 100.371(6)(b)(4), Fla. Stat. (2005).

CONCLUSION
Based on the foregoing, we hold that the initiative petition and proposed ballot title and summary for the "Florida Marriage Protection Amendment" meet the legal requirements of article XI, section 3 of the Florida Constitution and section 101.161(1) of the Florida Statutes (2005). We therefore approve the proposed amendment for placement on the ballot. In addition, we hold that the proposed FIS comports with applicable law and, therefore, approve the FIS as submitted for placement on the ballot. We note, however, that no other issues are being addressed here and this opinion should not be construed as expressing either favor for or opposition to the proposed amendment.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, QUINCE, CANTERO, and BELL, JJ., concur.