PER CURIAM.
The Attorney General of Florida has requested this Court’s opinion as to the validity of an initiative petition circulated pursuant to article XI, section 3 of the Florida Constitution, including the corresponding financial impact statement. We have jurisdiction. See art. IV, § 10, art. V, § 3(b)(10), Fla. Const. For the reasons expressed below, we approve the amendment, ballot title and summary, and the financial impact statement for placement on the ballot.
I. FACTS
On November 9, 2006, the Attorney General received a ballot initiative from the Secretary of State seeking to amend the Florida Constitution to prohibit state funding of research that destroys a live human embryo. This amendment is sponsored by Citizens for Science and Ethics, Inc.[1] The full text of the proposed amendment reads as follows:
Be it enacted by the people of Florida that a new section for Article X of the Constitution is created to add the following:
No revenue of the state shall be spent on experimentation that involves the destruction of a live human embryo.
The ballot title for the proposed amendment is “Prohibiting State Spending For Experimentation That Involves The Destruction of a Live Human Embryo.” The summary for the proposed amendment states: “No revenue of the state shall be spent on experimentation that involves the destruction of a live human embryo.”
The Financial Impact Statement for this proposed amendment, as prepared by the Financial Impact Estimating Conference, provides as follows: “This amendment is not expected to have an impact on state or local government expenses.”
II. GOVERNING LAW
The citizen ballot initiative process is recognized in the Florida constitution:
The power to propose the revision or amendment of any portion or portions of this constitution by initiative is reserved to the people, provided that, any such revision or amendment, except for those limiting the power of government to raise revenue, shall embrace but one subject and matter directly connected therewith.
Art. XI, § 3, Fla. Const.
The process begins when the sponsoring party files a petition and a copy of the proposed amendment with the custodian of state records, the Secretary of State. Id. Accompanying this petition are signatures collected from electors across the state. Id. Once the Secretary of State verifies that the threshold number of valid signatures has been reached, notice of the initiative is sent to the Attorney General, who then must request an advisory opinion from this Court. Art. IV, § 10, Fla. Const.; § 16.061, Fla. Stat. (2006). The advisory opinion is to address the ballot initiative’s compliance with article XI, section 3 of the Florida Constitution, which requires that an amendment by ballot touch upon “one subject and matter directly connected therewith.” Art. IV, § 10, Fla. Const.
*212 Through prior case law and advisory opinions, this Court has explained its standard of review as follows:
The Court’s inquiry, when determining the validity of initiative petitions, is limited to two legal issues: whether the petition satisfies the single-subject requirement of article XI, section 3, Florida Constitution, and whether the ballot titles and summaries are printed in clear and unambiguous language pursuant to section 101.161, Florida Statutes (1999).
Advisory Op. to the Att’y Gen. re Amendment to Bar Gov’t from Treating People Differently Based on Race in Pub. Educ., 778 So.2d 888, 890 (Fla.2000) (citing Advisory Op. to the Att’y Gen. re Right of Citizens to Choose Health Care Providers, 705 So.2d 563, 565 (Fla.1998); Advisory Op. to the Att’y Gen. re Prohibiting Pub. Funding of Political Candidates’ Campaigns, 693 So.2d 972, 974 (Fla.1997)).
When reviewing a proposed amendment to determine compliance with the single subject and ballot summary requirements, this Court has stated that it will “not address the merits or wisdom of the proposed amendment.” Advisory Op. to the Att’y Gen. re Fla. Marriage Prot. Amendment, 926 So.2d 1229, 1233 (Fla.2006) (citing Amendment to Bar Gov’t from Treating People Differently Based on Race in Pub. Educ., 778 So.2d at 891). Additionally:
[W]e have recognized that we “must act with extreme care, caution, and restraint before [we] remove[ ] a constitutional amendment from the vote of the people.” Askew v. Firestone, 421 So.2d 151, 156 (Fla.1982). In elaborating on this latter principle, we have noted that “the Court has no authority to inject itself in the process, unless the laws governing the process have been ‘clearly and conclusively’ violated.” Advisory Opinion to the Attorney Gen. re Right to Treatment & Rehab. for Non-Violent Drug Offenses, 818 So.2d 491, 498-99 (Fla.2002). It is within the framework of these fundamental principles that we review ... proposed amendments] and ballot language.
Fla. Marriage Prot. Amendment, 926 So.2d at 1233 (second and third alterations in original).
A. Single-Subject Rule
The single-subject requirement has two components: “(1) it prevents ‘logrolling,’ a practice that combines separate issues into a single proposal to secure passage of an unpopular issue; and (2) it ‘prevents] a single constitutional amendment from substantially altering or performing the functions of multiple aspects of government.’ “ Id. (quoting Advisory Op. to the Att’y Gen. re the Med. Liab. Claimant’s Comp. Amendment, 880 So.2d 675, 677 (Fla.2004)). To comply with the single-subject requirement, “[a] proposed amendment must manifest a ‘logical and natural oneness of purpose’ in order to satisfy the single-subject requirement.” Med. Liab. Claimant’s Comp. Amendment, 880 So.2d at 677 (quoting Fine v. Firestone, 448 So.2d 984, 990 (Fla.1984)). “This determination requires the Court to consider whether the proposed amendment affects separate functions of government, as well as how it affects other provisions of the constitution.” Id. (citing In re Advisory Op. to the Att’y Gen. — Restricts Laws Related to Discrimination, 632 So.2d 1018, 1020 (Fla.1994)).
1. Logrolling
Logrolling occurs when “several separate issues are rolled into a, single initiative in order to aggregate votes or secure approval of an otherwise unpopular issue.” In re Advisory Op. to Att’y Gen. — Save Our Everglades, 636 So.2d 1336, 1339 (Fla.1994). Thus, part of the goal of this *213 Court’s single-subject scrutiny is to “avoid voters having to accept part of a proposal which they oppose in order to obtain a change which they support.” Fine, 448 So.2d at 993. The Court uses a “oneness of purpose” standard, which looks at whether a proposed amendment “may be logically viewed as having a natural relation and connection as component parts or aspects of a single dominant plan or scheme. Unity of object and plan is the universal test.” Id. at 990 (quoting City of Coral Gables v. Gray, 154 Fla. 881, 19 So.2d 318, 320 (1944)).
We find that the proposed amendment only addresses one subject, the prohibition of the state funding of experimentation that involves the destruction of a live human embryo. It does not reach any other subject and does not constitute logrolling.
2. Altering or Performing the Functions of Multiple Branches of Government
A single-subject violation can also occur when a proposed amendment “alters or performs the functions of multiple branches of government.” Fla. Marriage Prot. Amendment, 926 So.2d at 1235. We have clarified that “[a] proposal that affects several branches of government will not automatically fail; rather, it is when a proposal substantially alters or performs the functions of multiple branches that it violates the single-subject test.” Advisory Op. to the Att’y Gen. re Fish & Wildlife Conservation Comm’n, 705 So.2d 1351, 1353-54 (Fla.1998) (emphasis added) (citing Save Our Everglades, 636 So.2d at 1340). This Court has also repeatedly emphasized that the rationale of the single-subject restriction in general is to guard against “precipitous” or “cataclysmic” changes to the government structure. See, e.g., Advisory Op. to Atty. Gen. re Additional Homestead Tax Exemption, 880 So.2d 646, 650 (Fla.2000).
While we recognize that the proposed amendment, if enacted, appears to limit the authority of the legislative and executive branches of state government, we conclude that this proposed amendment does not substantially alter or perform the functions of multiple branches of government. Accordingly, since it also does not logroll any issues, we find no violation of the single-subject rule.
B. Ballot Title and Summary
The title and ballot summary of any proposed amendment must comply with section 101.161, Florida Statutes, which states:
Whenever a constitutional amendment or other public measure is submitted to the vote of the people, the substance of guch amendment or other public measure shall be printed in clear and unambiguous language on the ballot ... followed by the word “yes” and also by the word “no,” .... Except for amendments and ballot language proposed by joint resolution, the substance of the amendment ... shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure.... The ballot title shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of.
§ 101.161(1), Fla. Stat. (2006).
The “clear and unambiguous” requirement ensures that a voter has notice of the subject matter and issues addressed by the proposed amendment. See Fla. Marriage Prot. Amendment, 926 So.2d at 1236 (quoting Save Our Everglades, 636 So.2d at 1341). In evaluating a proposed amendment:
The proper analysis to assess whether [the] ballot title and summary meet this requirement focuses on two questions: (1) whether the ballot title and summary, in clear and unambiguous lan *214 guage, fairly inform the voter of the chief purpose of the amendment; and (2) whether the language of the title and summary, as written, misleads the public.
Id. at 1236 (citing Additional Homestead Tax Exemption, 880 So.2d at 651-52). The ballot title and summary do not have to discuss every detail or consequence of the amendment, but they must be sufficiently “accurate and informative.” Advisory Op. to the Att’y Gen. re Protect People From Health Hazards of Using Tobacco, 926 So.2d 1186, 1194 (Fla.2000).
The summary and the proposed constitutional amendment are identical and provide as follows: “No revenue of the state shall be spent on experimentation that involves the destruction of a live human embryo.” The ballot title is nearly identical and reads, “Prohibiting state spending for experimentation that involves the destruction of a live human embryo.” Accordingly, both prongs of the summary analysis are easily satisfied since the entire amendment also serves as the summary to be placed on the ballot. We find no basis to reject the proposed summary and ballot title under section 101.161, Florida Statutes.
C. Financial Impact Statement
This Court must also determine whether the financial impact statement complies with the requirements provided in the Florida Constitution and the statute. Article XI, section 5, Florida Constitution, addresses financial impact statements and provides in relevant part:
(c) The legislature shall provide by general law, prior to the holding of an election pursuant to this section, for the provision of a statement to the public regarding the probable financial impact of any amendment proposed by the initiative pursuant to section 3.
Section 100.371(5), Florida Statutes (2006), now addresses the financial impact statement as follows:
(5)(a) Within 45 days after receipt of a proposed revision or amendment to the State Constitution by initiative petition from the Secretary of State, the Financial Impact Estimating Conference shall complete an analysis and financial impact statement to be placed on the ballot of the estimated increase or decrease in any revenues or costs to state or local governments resulting from the proposed initiative. The Financial Impact Estimating Conference shall submit the financial impact statement to the Attorney General and Secretary of State.
[[Image here]]
(b)3. Principals of the Financial Impact Estimating Conference shall reach a consensus or majority concurrence on a clear and unambiguous financial impact statement, no more than 75 words in length, and immediately submit the statement to the Attorney General. Nothing in, this subsection prohibits the Financial Impact Estimating Conference from setting forth a range of potential .impacts in the financial impact statement.
§ 100.371(5), Fla. Stat. (2006). In deciding the validity of a financial impact statement, the Court has limited itself only to addressing whether the statement is clear and unambiguous, consists of no more than seventy-five words, and is limited to addressing the estimated increase or decrease in any revenues or costs to the state or local governments. See Advisory Op. re Protect People from Health Hazards of Using Tobacco, 926 So.2d at 1194. In the cases where this Court found the financial impact statement to be defective, it was because the statement did not comply with these specific requirements. See, *215 e.g., Advisory Op. to Att’y Gen. re Repeal of High Speed Rail Amendment, 880 So.2d 628, 629 (Fla.2004) (rejecting the proposed financial impact statement because certain provisions were not expressed in terms of the “probable financial impact” and because the statement went beyond addressing “revenues or costs to state or local governments”); Advisory Op. to the Att’y Gen. re Pub. Prot. from Repeated Med. Malpractice, 880 So.2d 686, 687 (Fla.2004) (rejecting the proposed financial impact statement because phrase “range of potential impacts” in section 100.371(6)(b)(3) must relate to the phrase “probable financial impact” set forth in the constitution and the proposed statement included potential impacts beyond monetary estimates); Advisory Op. to the Att’y Gen. re Authorizes Miami-Dade & Broward County Voters to Approve Slot Machines in Parimutuel Facilities, 880 So.2d 689, 690 (Fla.2004) (same).
The financial impact statement for this proposed amendment states: “This amendment is not expected to have an impact on state or local government expenses.” The instant financial impact statement is well within the 75-five word limit and it clearly and unambiguously conveys that the amendment will not impact state or local government expenses. . We find no basis to reject the financial impact statement under section 100.371(6).
III. CONCLUSION
For the reasons stated, we hold that the initiative petition and proposed ballot title and summary for the amendment “Prohibiting state spending for experimentation that involves the destruction of a live human embryo” meets the legal requirements of article XI, section 3 of the Florida Constitution, and section 101.161(1), Florida Statutes (2006). Likewise, the accompanying financial impact statement is in accordance with section 100.371(5), Florida Statutes (2006). Accordingly, we approve the amendment and financial impact statement for placement on the ballot.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, and QUINCE, JJ., concur.
BELL, J., concurs in part and dissents in part with an opinion, in which CANTERO, J., concurs.

. No briefs were filed in opposition to this proposed amendment