# Supreme Court of Florida

————————

No. SC18-1339

————————

**COUNTY OF VOLUSIA, etc., et al.,**
Appellants,

vs.

**KENNETH J. DETZNER, etc., et al.,**
Appellees.

September 7, 2018

PER CURIAM.

Volusia, Broward, and Miami-Dade Counties seek review of a circuit court order validating the ballot title and summary of a proposed amendment to the Florida Constitution ("Amendment 10"). The First District Court of Appeal certified the order as presenting a question of great public importance requiring this Court's immediate resolution. We have jurisdiction under article V, section 3(b)(5) of the Florida Constitution, and affirm the judgment of the circuit court.

## Background

On May 9, 2018, the 2017-2018 Constitution Revision Commission (CRC) submitted its proposed revisions and accompanying ballot summaries to the

Secretary of State. Among them was Revision 5, retitled Amendment 10 for the November 2018 ballot. The ballot title and summary for Amendment 10 state:

CONSTITUTIONAL REVISION

ARTICLE III, SECTION 3

ARTICLE IV, SECTIONS 4, 11

ARTICLE VIII, SECTIONS 1, 6

STATE AND LOCAL GOVERNMENT STRUCTURE AND OPERATION. —

Requires legislature to retain department of veterans' affairs. Ensures election of sheriffs, property appraisers, supervisors of elections, tax collectors, and clerks of court in all counties; removes county charters' ability to abolish, change term, transfer duties, or eliminate election of these offices. Changes annual legislative session commencement date in even-numbered years from March to January; removes legislature's authorization to fix another date. Creates office of domestic security and counterterrorism within department of law enforcement.

At issue in this case is the portion of the summary stating that Amendment 10 requires the election of the five named officers ("constitutional officers") in all counties, and eliminates county charters' ability to abolish, transfer duties, or

change the terms of those constitutional offices. The relevant portion of Amendment 10 would amend[1] article VIII, section 1(d) of the Florida Constitution as follows:

> (d) COUNTY OFFICERS. There shall be elected by the electors of each county, for terms of four years, a sheriff, a tax collector, a property appraiser, a supervisor of elections, and a clerk of the circuit court; except, when provided by county charter or special law approved by vote of the electors of the county, any county officer may be chosen in another manner therein specified, or any county office may be abolished when all the duties of the office prescribed by general law are transferred to another office. Unless When not otherwise provided by county charter or special law approved by vote of the electors or pursuant to Article V, section 16, the clerk of the circuit court shall be ex officio clerk of the board of county commissioners, auditor, recorder and custodian of all county funds. Notwithstanding subsection 6(e) of this article, a county charter may not abolish the office of a sheriff, a tax collector, a property appraiser, a supervisor of elections, or a clerk of the circuit court; transfer the

---

1. Words stricken are deletions; words underlined are additions.

duties of those officers to another officer or office; change the length of the four-year term of office; or establish any manner of selection other than by election by the electors of the county.

Amendment 10 would also add the following section to article VIII of the Florida Constitution:

SECTION 6. Schedule to Article VIII.—

. . . .

(g) SELECTION AND DUTIES OF COUNTY OFFICERS.—

(1) Except as provided in this subsection, the amendment to Section 1 of this article, relating to the selection and duties of county officers, shall take effect January 5, 2021, but shall govern with respect to the qualifying for and the holding of the primary and general elections for county constitutional officers in 2020.

(2) For Miami-Dade County and Broward County, the amendment to Section 1 of this article, relating to the selection and duties of county officers, shall take effect January 7, 2025, but shall govern with respect to the qualifying for and the holding of the primary and general elections for county constitutional officers in 2024.

In June 2018, Volusia County (along with Philip T. Fleuchaus and T. Wayne Bailey, Volusia County voters) and Broward County independently sued the Florida Department of State and Secretary of State Kenneth Detzner, seeking declaratory and injunctive relief. Both argued that the ballot title and summary of Amendment 10 mislead voters by failing to sufficiently describe Amendment 10's chief purpose. The circuit court consolidated the lawsuits and permitted Miami-Dade County to intervene as a plaintiff. The court further granted leave for the Florida Association of Court Clerks, Florida Tax Collectors Association, and Anne M. Gannon in her capacity as Palm Beach County Tax Collector to intervene as defendants.

All parties then filed cross-motions for summary judgment. The circuit court granted final summary judgment in favor of Appellees, concluding that the ballot language would enable the average voter to understand the primary effect of Amendment 10. Therefore, the court held, Amendment 10 should be included on the November 2018 ballot.

**Standard of Review**

We review the validity of a proposed constitutional amendment de novo. *Armstrong v. Harris*, 773 So. 2d 7, 11 (Fla. 2000). In conducting this review, our sole task is to determine whether the ballot language sets forth the substance of the amendment in a manner consistent with section 101.161, Florida Statutes (2018).

Section 101.161(1) requires that a constitutional amendment "submitted to the vote of the people" include a title "not exceeding 15 words in length, by which the measure is commonly referred to," and a ballot summary that explains "the chief purpose of the measure" in no more than seventy-five words. In assessing conformity with these requirements, we consider two questions: "(1) whether the ballot title and summary, in clear and unambiguous language, fairly inform the voter of the chief purpose of the amendment; and (2) whether the language of the title and summary, as written, misleads the public." *Advisory Op. to Att'y Gen. re Standards for Establishing Legislative Dist. Boundaries*, 2 So. 3d 175, 184 (Fla. 2009) (quoting *Advisory Op. to Att'y Gen. re Prohibiting State Spending for Experimentation that Involves the Destruction of a Live Human Embryo*, 959 So. 2d 210, 213-14 (Fla. 2007)). We exercise "extreme care, caution, and restraint" before striking a proposed amendment from the ballot, holding a proposal invalid only if the record proves the amendment to be "clearly and conclusively defective." *Askew v. Firestone*, 421 So. 2d 151, 156 (Fla. 1982); *Armstrong*, 773 So. 2d at 11.

**Analysis**

*I. Chief Purpose*

Appellants first argue that the ballot title and summary are defective for failing to inform voters of what the Appellants assert is Amendment 10's true chief

purpose: to divest county voters of their current constitutional right to decide the structure of their local governments. Since the summary makes no mention of this loss of rights, Appellants argue, the ballot language is misleading.

We disagree. The summary accurately states the effect that Amendment 10's passage would have on county charters and special laws; there is no need to explain ramifications that are implicit in those statements. The summary tells voters that the amendment would "ensure" election of constitutional officers in all counties, and provides that county charters may not allow for their selection by an alternative method. It is therefore unnecessary to explain the obvious result—that voters would not be able to eliminate election of the officers by charter or special law. Similarly, because the summary makes clear that the existence of the constitutional offices, along with their duties and terms, would no longer be subject to change by charter, it would be redundant to state that county electors could not amend their charter to make the prohibited changes.

## II. *"Current State of the Law"*

Appellants next argue that the ballot language fails to describe "the current state of the law," rendering it misleading in two ways. First, Appellants claim that the ballot language is deficient because it does not inform voters that constitutional officers are typically elected. Without this information, Appellants contend, the ballot summary's statement that Amendment 10 "ensures election" of

constitutional officers gives voters the false impression that such elections are a new right, or amounts to "political rhetoric" leading voters to believe that the elections are under threat of elimination. Second, Appellants argue that the summary misleads voters by failing to identify existing constitutional rights that will be affected by Amendment 10's passage. Because both arguments are without merit, we decline to find the ballot language misleading on this basis.

First, the summary's failure to inform voters that constitutional officers are elected unless otherwise provided by a county charter or approved special law does not mislead voters. While Appellants suggest that this lack of information will lead voters to believe that elections are a new right, the summary does not state that Amendment 10 "creates" or "establishes" a right to elect constitutional officers. Rather, it provides that Amendment 10 "ensures election" of constitutional officers, and this language accurately describes its effect. Because it would prevent county charters or approved special laws from abolishing constitutional offices or allowing for their officeholders to be selected by an alternative method, Amendment 10 would therefore "ensure" that such officers would be elected in "all counties."

Nor does the ballot language suggest that elections are at risk of being eliminated if Amendment 10 is not passed. The summary does not claim that Amendment 10's passage is necessary to preserve the right to elect constitutional

officers, as claimed by Appellants. Instead, it states that the amendment would ensure their election because, as noted above, this would be the result of Amendment 10's restrictions on county charters and approved special laws.

The ballot language is also not misleading for failing to identify existing constitutional rights that will be affected by Amendment 10. While Appellants claim that the summary neglects to recognize its impact on article VIII, sections 1(c), 1(d) and 6(e), the title indicates that the proposed amendment will alter article VIII, sections 1 and 6. The summary does not need to further discuss its effect on voters' ability under sections 1(c) and 6(e)[2] to amend their county charter because it clearly explains that charters will be prohibited from taking certain actions if Amendment 10 passes. Voters will draw the logical conclusion that they will not be permitted to amend their charter in a manner inconsistent with the amendment. The summary also states that Amendment 10's passage would "ensure election" of constitutional officers; this accurately reflects that voters will no longer have a right under section 1(d) to approve a special law allowing for the selection of such officers by another method.

2. Article VIII, section 1(c) provides that county charters may be adopted, amended, or repealed only by county electors in a special election called for that purpose; section 6(e) incorporates a provision of the 1885 Florida Constitution granting Miami-Dade County citizens the right to adopt and revise a county charter.

### III. Multiple Subjects

Appellants next contend that the ballot language is misleading because it groups together four separate measures. Appellants have conceded, however, that CRC proposals are not bound by the single-subject requirement governing initiative petitions. It follows that the bundling of measures creates a defect only if the measures are presented on the ballot in a misleading way. Here, the ballot language is clear; we are therefore unpersuaded by Appellants' argument.

First, the summary does not mislead voters by combining "wholly unrelated" proposals, as argued by Appellants. The factual predicate for this argument is inaccurate. Though the measures address different topics, there is a shared element. As the title states, each proposal relates to "state and local government structure and operation." In any event, there is no basis for concluding that the relationship between the issues addressed in separate measures identified in the ballot summary results in deception of the voters.

Appellants next claim that the CRC's decision to bundle together separate measures left it unable to sufficiently describe the effect of the contested provision within the summary's seventy-five word limit. However, as earlier discussed, the ballot summary provides an adequate description of the amendment's chief purpose as it relates to constitutional officers. That it did so in fewer words than it

would have if the measure had been separately submitted to voters is of no consequence.

Finally, the placement of the contested provision does not render the summary defective. Appellants claim that the summary deceptively includes the contested provision regarding constitutional officers, which would have significant effects on the structure of local government, between two "popular" and "largely symbolic" state government measures. But the Appellants do not explain how the structure of the ballot summary misleads the voters concerning what the proposal will do. There is no basis to accept the argument that the proposal is invalid on the ground that voters would be more likely to vote for Amendment 10 because of the ordering of provisions within the summary. There is nothing in the ordering that is deceptive in any way.

## IV. Retroactive Application

Appellants last argue that the summary is misleading because it fails to describe Amendment 10's effect on changes previously made to county charters. The two appellants who address this issue take different positions. Volusia County argues that the summary is misleading because it fails to disclose whether Amendment 10 will apply retroactively, thereby negating changes previously made to charters, or prospectively, only preventing charters from making the prohibited changes in the future. Miami-Dade County, on the other hand, contends that the

amendment has retroactive application in arguing that the ballot summary is deficient because it does not inform voters that Amendment 10 would invalidate existing charter provisions.  However, because our earlier opinions indicate that the question of whether an amendment operates retroactively should be resolved in a post-election action, we decline to consider either argument.  *See Advisory Op. to Att'y Gen. re Voter Control of Gambling*, 215 So. 3d 1209, 1216 (Fla. 2017) (holding that a proposed amendment's retroactive application should be determined "*after* the electorate approved the amendment[]"); *see also Fla. Hosp. Waterman, Inc. v. Buster*, 984 So. 2d 478, 481 (Fla. 2008) (determining that an approved amendment applied retroactively); *State v. Lavazolli*, 434 So. 2d 321, 322 (Fla. 1983) (determining that an approved amendment did not have retroactive application).

## Conclusion

For the reasons explained above, we affirm the circuit court's decision approving Amendment 10 for placement on the ballot.  No motion for rehearing will be allowed.

It is so ordered.

CANADY, C.J., and PARIENTE, LEWIS, QUINCE, POLSTON, LABARGA, and LAWSON, JJ., concur.

Certified Judgments of Trial Courts in and for Leon County – James O. Shelfer, Judge - Case Nos. 372018CA001270 and 372018CA001342 – An Appeal from the District Court of Appeal, First District, Case Nos. 1D18-3361, 1D18-3362, and 1D18-3363

Abigail Price-Williams, Miami-Dade County Attorney, Oren Rosenthal, Michael B. Valdes, and Miguel A. Gonzalez, Assistant County Attorneys, Miami, Florida,

 for Appellant Miami-Dade County

Daniel D. Eckert, County Attorney, DeLand, Florida,

 for Appellants Volusia County, Philip T. Fleuchaus, and T. Wayne Bailey

Andrew J. Meyers, Broward County Attorney, Mark A. Journey, Senior Assistant County Attorney, Joseph K. Jarone, Scott Androne, and Claudia Capdesuner, Assistant County Attorneys, Fort Lauderdale, Florida,

 for Appellant Broward County

Barry Richard of Greenberg Traurig, P.A., Tallahassee, Florida,

 for Appellee Florida Association of Court Clerks, Inc.

Timothy R. Qualls and Kayla M. Scarpone of Young Qualls, P.A., Tallahassee, Florida,

 for Appellee Florida Tax Collectors Association

John A. Tucker of Foley & Lardner, Jacksonville, Florida; Christina M. Kennedy and Virginia R. Beeson, Foley & Lardner, Orlando, Florida; and Robert H. Hosay and James A. McKee of Foley & Lardner, Tallahassee, Florida,

 for Appellee Anne M. Gannon, Palm Beach Tax Collector

Pamela Jo Bondi, Attorney General, Amit Agarwal, Solicitor General, Edward M. Wenger, Chief Deputy Solicitor General, Jordan Pratt, Deputy Solicitor General, Tallahassee, Florida,

 for Appellee Kenneth J. Detzner, Secretary of State

Laura Youmans, Legislative Counsel, Tallahassee, Florida,

    for Amicus Curiae Florida Association of Counties, Inc.

Thomas W. Poulton of DeBevoise & Poulton, P.A., Winter Park, Florida,

    for Amicus Curiae Florida Sheriffs Association

Gigi Rollini and Glenn Burhans, Jr., of Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., Tallahassee, Florida,

    for Amicus Curiae Association for Constitutional Officers, Inc.