542 So.2d 395 (1989)
In re ESTATE OF William A. HOWARD, Deceased.
Peggy Mixon HOWARD, Appellant,
v.
Thomas M. BAUMER, Personal Representative of the Estate of William A. Howard, Deceased, William G. Howard, Barbara Howard Highsmith, Brenda Howard Wilbanks and Tala Howard Reynolds, Appellees.
No. 87-1090.
District Court of Appeal of Florida, First District.
April 7, 1989.
Joel S. Perwin of Podhurst, Orseck, Parks, Josefberg, Eaton, Meadow & Olin, P.A., Miami, and Robert J. Beckham of Beckham, McAliley & Schulz, P.A., Jacksonville, for appellant.
Dana G. Bradford II of Gallagher, Baumer, Mikals, Bradford, Cannon & Walters, P.A., Jacksonville, for appellee, Thomas M. Baumer.
Aaron K. Bowden and Walter G. Arnold of Arnold & Stratford, P.A., Jacksonville, for appellees William G. Howard, Barbara Howard Highsmith, Brenda Howard Wilbanks and Tala Howard Reynolds.
NIMMONS, Judge.
The sole issue presented for our review on this appeal is whether the probate court erred in striking appellant's demand for a jury trial in a probate adversary proceeding arising out of a petition to determine beneficiaries which sought to disqualify a murdering spouse under Section 732.802, Florida Statutes (1985). We affirm.
In November 1985, William A. Howard was murdered. His wife, appellant Peggy Mixon Howard, was indicted for his murder and thereafter acquitted by a jury. In June 1986, William Howard's personal representative, appellee Thomas M. Baumer, filed a petition to determine beneficiaries, in which he asserted that, notwithstanding her acquittal in the criminal prosecution, Peggy Howard had in fact stabbed her husband to death. The petition sought an order determining whether Peggy Howard had unlawfully and intentionally killed her husband thus disqualifying her under Section 732.802, Florida Statutes, from benefiting from his death.
Section 732.802, Florida Statutes (1985) provides in relevant part:
(1) A surviving person who unlawfully and intentionally kills or participates in procuring the death of the decedent is not entitled to any benefits under the will or under the Florida Probate Code, and the estate of the decedent passes as if the killer had predeceased the decedent. Property appointed by the will of the *396 decedent to or for the benefit of the killer passes as if the killer had predeceased the decedent.
(2) Any joint tenant who unlawfully and intentionally kills another joint tenant thereby effects a severance of the interest of the decedent so that the share of the decedent passes as the decedent's property and the killer has no rights by survivorship. This provision applies to joint tenancies with right of survivorship and tenancies by the entirety in real and personal property; joint and multiple-party accounts in banks, savings and loan associations, credit unions, and other institutions; and any other form of coownership with survivorship incidents.
(3) A named beneficiary of a bond, life insurance policy, or other contractual arrangement who unlawfully and intentionally kills the principal obligee or the person upon whose life the policy is issued is not entitled to any benefit under the bond, policy, or other contractual arrangement; and it becomes payable as though the killer had predeceased the decedent.
* * * * * *
(5) A final judgment of conviction of murder in any degree is conclusive for purposes of this section. In the absence of a conviction of murder in any degree, the court may determine by the greater weight of the evidence whether the killing was unlawful and intentional for purposes of this section.
In her answer to the petition, Peggy Howard moved to strike that portion of the petition in which the personal representative claimed that the widow was not entitled to payment as a beneficiary under any of the decedent's insurance policies, asserting that the probate proceeding was not the proper forum for resolution of the distribution of the insurance proceeds; other litigation had been commenced prior to the filing of the petition to resolve the insurance issues.[1] Also in her answer Mrs. Howard demanded a jury trial on all issues triable as of right by a jury. The trial court denied Mrs. Howard's motion to strike and pursuant to a motion filed by the personal representative, struck the widow's demand for a jury trial.
Following a bench trial, the trial court entered final judgment in favor of the personal representative, concluding that clear and convincing evidence established that Mrs. Howard had unlawfully and intentionally killed her husband. Accordingly, the court held that Mrs. Howard was barred by Section 732.802 from receiving any benefits under the will or Florida Probate Code; had no rights of survivorship in properties owned as tenants by the entireties by decedent and widow; could not claim the marital home pursuant to the terms of a trust agreement; was not entitled to payment as a beneficiary under any insurance policies *397 on decedent's life; was not entitled to receive any sums paid by decedent's former employer, such as retirement or deferred compensation benefits; and was not entitled to any benefits pursuant to the prenuptial agreement between decedent and the widow.
Contrary to appellant's assertions, the probate court did not err in striking Mrs. Howard's demand for a jury trial in the probate adversary proceeding below. There exists no constitutional right to a jury trial in a probate adversary proceeding brought pursuant to Section 732.802, Florida Statutes. Section 732.802, commonly known as the "Probate Murder Statute" originated in the 1933 Florida Probate Code. From its inception, the statute has provided a remedy by which a person who murders the decedent is prevented from taking any benefits from the decedent's estate. The means by which relief is sought under the statute is typically via a petition to determine beneficiaries filed in probate court. Section 733.105, Florida Statutes.
Historically, matters which lie within the jurisdiction of the probate court for determination are not subject to the constitutionally protected right to a jury trial. Article I, § 22, of the Florida Constitution preserves the right to trial by jury as to proceedings in which such a right existed in 1845, when Florida's first constitution became effective. In In Re Forfeiture of 1978 Chevrolet Van, 493 So.2d 433 (Fla. 1986), the Florida Supreme Court explained that a matter must have its origins in common law, in a context where a jury trial had been preserved prior to the enactment of the Florida Constitution, for the right of jury trial to attach:
Article I, section 22 of the Florida Constitution (1968), provides in part: "The right of trial by jury shall be secured to all and remain inviolate." Our first constitution of 1838, which became effective upon Florida's admittance to the Union in 1845, and all subsequent constitutions have contained similar provisions. This provision guarantees the right to trial by jury in those cases in which the right was enjoyed at the time this state's first constitution became effective in 1845. (e.s.)
493 So.2d at 434. See also Hathorne v. Panama Park Co., 44 Fla. 194, 32 So. 812 (1902).
In Lavey v. Doig, 25 Fla. 611, 6 So. 259 (1889), the Florida Supreme Court recognized that probate proceedings originated in the ecclesiastical, or equity, courts of England, a context outside the common law, and indeed had been instituted pursuant to statutory measures adopted in Florida subsequent to the original Florida Constitution. As such, the court held that no constitutional right to a jury trial existed in probate proceedings. See In re Estate of Pearsons, 190 So.2d 593 (Fla. 2d DCA 1966) (a probate court is essentially a court of equity, and is guided by equitable principles in the performance of its duties); In re Estate of DuVal, 174 So.2d 580 (Fla. 2d DCA 1965) (the right to a jury trial did not exist in the ecclesiastical courts); Allen v. Estate of Dutton, 394 So.2d 132 (Fla. 5th DCA 1980) (court found no error in the trial court's decision to strike appellant's request for a jury trial of the undue influence issue, holding that no probate matters were ever submitted to jury trial at common law, or under the prior probate law of Florida).
At least one other court has passed directly on the precise question presented here in the context of an adversary proceeding to determine beneficiaries. In In re Estate of Congdon, 309 N.W.2d 261 (Minn. 1981), the Supreme Court of Minnesota was called upon to determine whether the right to jury trial existed, pursuant to Minnesota's Probate Murder Statute,[2] a statute substantially identical to the Florida statute. In that case, the appellant was acquitted in a criminal trial for the murder of her mother. Thereafter, petitions to disqualify her from taking any interest in the estate were filed by the appropriate parties *398 in the Minnesota probate court. The case eventually reposed in the Minnesota Supreme Court for decision on various issues, including the question of the right to jury trial.
According to the opinion of the Minnesota Supreme Court on the jury trial issue, the matter was governed by the very simple fact that the statute in question created proceedings which were unknown at common law prior to the time of the adoption of the Minnesota Constitution, which, like Florida's, preserved the right to jury trial. Accordingly, the Minnesota court held that there was no right to a jury trial for the civil murder proceeding contemplated by the statute:
Proceedings pursuant to Minn. Stat. § 524.2-803 (1980) did not exist at the time the Minnesota Constitution was adopted. There was no such remedy until 1935, when the statutory predecessor of Minn. Stat. § 527.87 (1980) was adopted. * * * For this reason, appellant does not have a right to a jury trial.
309 N.W.2d at 272.
In the instant case we are dealing with a statute enacted subsequent to the adoption of the Florida Constitution, concerning matters as to which a jury trial was not provided at common law.
Appellant argues that the mere characterization of an issue as a "probate" issue is not sufficient to displace a preexisting right to jury trial; it is the nature of the issue that matters and not whether the issue arises in a proceeding which may be considered "equitable." Appellant first maintains that the principle embraced by Section 732.802  that a wrongdoer should not profit by his wrongdoing  is a legal principle of the common law. As such, it can be assimilated into two categories of cases which were jury-demandable at common law, namely, forfeiture and an implied condition of the insurance contract.
Contrary to appellant's assertions, however, the principle embraced by Section 732.802 is a principle of equity. See Ashwood v. Patterson, 49 So.2d 848 (Fla. 1951) ("fundamental equitable principle that `no one shall be permitted to ... take advantage of his own wrong ... or profit by his own crime'"); Carter v. Carter, 88 So.2d 153 (Fla. 1956); Prudential Insurance Company of America, Inc. v. Baitinger, 452 So.2d 140 (Fla. 3d DCA 1984). Because the statute essentially codifies an equitable principle, it creates no jury-demandable issue. See Cerrito v. Kovitch, 457 So.2d 1021 (Fla. 1984); King Mountain Condominium Association, Inc. v. Gundlach, 425 So.2d 569 (Fla. 4th DCA 1982).
Appellant further maintains that even if the statute were construed to have codified a preexisting equitable issue, that issue is nevertheless subject to trial by jury because of its relationship to Mrs. Howard's contract rights. According to appellant, when the ultimate question at stake is the question of a party's entitlement to life insurance proceeds, the issues surrounding that question are jury-demandable regardless of the context or forum in which it arises. This is so, appellant urges, because the distribution of life insurance proceeds is not a matter of probate, but a matter of contract, in spite of the provision of the Probate Code which purports to affect the enforcement of a life insurance policy.
Appellant misinterprets the nature of the adversary probate proceedings below in her attempt to characterize them as constituting an "action on a contract." Appellant attempts to liken the proceedings below to a hypothetical suit "at law" for money damages, filed by a beneficiary against an insurance company on a contract, in which the insurance company has raised an equitable affirmative defense.
An adversary proceeding under Section 732.802 is not a damages action asserting breach of contract. This is readily apparent from the parties involved. The contracting parties to any insurance policy are not before the probate court. There is no claim passing between beneficiary and insurer for "breach of contract" or otherwise, and in fact, the terms and provisions of any particular insurance contract are not resolved in the adversary proceeding. The probate court has not resolved any issue as to who in fact is entitled to receive insurance proceeds in the event a beneficiary is *399 disqualified, and in fact makes no effort to resolve issues between competing secondary beneficiaries.
Rather, the sole issue in a Section 732.802 adversary proceeding is whether the statute applies because the heir or beneficiary has unlawfully and intentionally killed the decedent, and the alleged murdering party is disqualified thereunder. The only parties to this action are the other potential heirs and beneficiaries, and the court is called upon merely to resolve whether, among the heirs and beneficiaries, one should be disqualified pursuant to the provisions of the statute. The statute's thrust is to operate to bind only the parties before it  that is, the heirs, personal representative and other beneficiaries  so as to govern their dealings with the estate, and with each other in dealing with third parties who enter into contractual obligations for payment of money upon the decedent's death. The single question to be answered is served by a probate proceeding adjudicating that question in light of a fundamental equitable principle, and is simply not a "contract action" or "action at law" in which the right to jury trial exists.
Appellant further asserts that the "equitable" concept embraced by Section 732.802 became "legal" in nature and jury-demandable by virtue of its codification in the statute. This argument is without merit. Codification of the equitable principle embraced by the statute did not change its character so as to create a new right to trial by jury. Again, the question of whether a matter is subject to trial by jury turns upon whether it is the type of matter where the right to jury trial was recognized when the Florida Constitution was adopted in 1845. See In Re Forfeiture of 1978 Chevrolet Van, 493 So.2d 433 (Fla. 1966) (Supreme Court specifically rejected the argument that codification of proceedings for government forfeiture of private property by a "new statute" controlled the character of such a matter from the standpoint of the propriety of a jury trial).
Appellant finally maintains that the court committed "fundamental error" because it adjudicated facts "that will  or may control the outcome of other pending litigation in which Peggy Mixon Howard has the right to a jury trial on the same facts." The other proceedings referred to are actions pending in state and federal courts to determine who is entitled to the proceeds from policies insuring the decedent's life.
The United States Supreme Court has held that even if a prior judgment in an equitable proceeding collaterally estops a party from litigating the same facts before a jury in another pending action, the judgment in the equitable proceeding does not amount to a violation of the party's right to a trial by jury under the Seventh Amendment to the United States Constitution. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). This is so because the party against whom estoppel is asserted has litigated questions of fact, and has had the facts determined against him in an earlier proceeding. There is no further fact-finding function for the jury to perform, since the common factual issues have been resolved in the previous action. 439 U.S. at 336, 99 S.Ct. at 654.
We have examined the remaining arguments presented by appellant and find them to be without merit.
Accordingly, we hold that there is no right to a jury trial in a probate adversary proceeding upon a petition to determine beneficiaries to disqualify a murdering spouse under Section 732.802, Florida Statutes. The probate court's final order is therefore AFFIRMED.
JOANOS and WIGGINTON, JJ., concur.
NOTES
[1] During the pendency of the personal representative's petition, there were pending three other proceedings regarding the disbursement of William Howard's life insurance benefits. One was a complaint filed in June 1986 by Peggy Howard against the Independent Life and Accident Insurance Company in the circuit court in Dade County. This complaint, which demanded trial by jury, was filed by Peggy Howard before the personal representative filed his petition to determine beneficiaries in the probate action. Independent Life filed a counterclaim for interpleader in the Dade County action. The other proceeding was an interpleader complaint filed in the circuit court in Duval County by Independent Life against Peggy Howard, the personal representative, and all of the contingent beneficiaries. Independent Life later dismissed that action and filed an interpleader complaint in the U.S. District Court for the Northern District of Florida, Jacksonville Division.

The case in federal district court has proceeded forward, with the respective parties advancing their claims and rights to the various distinct funds deposited with the district court. At the present time, motions for summary judgment by various parties have been filed, argued, and briefed and are pending decision.
In the Dade County action, where Independent Life had filed a counterclaim for interpleader, the federal district court's action became the basis of a motion to dismiss filed by Independent Life. This motion pointed out that the federal court had exercised jurisdiction over the funds in question, and that the issue concerning Independent Life's liability had become subject to dismissal as "being moot and res judicata." Thereafter, the circuit judge in Dade County entered an order staying the Dade County action, specifically referencing the actions of the federal district court as well as the probate court's actions.
[2] Section 524.2-803(e), Minn. Stat. (1980) provides that in the absence of a conviction "the court may determine by a preponderance of evidence whether the killing was felonious and intentional... ."