980 So.2d 575 (2008)
Shuzuka Yawata MANNINO, Appellant,
v.
Paul Singh MANNINO, Appellee.
No. 2D07-2744.
District Court of Appeal of Florida, Second District.
April 25, 2008.
Carmen R. Gillett, Sarasota, for Appellant.
Mark C. Dungan and Leslie Wulfsohn Loftus of Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A., Sarasota, for Appellee.
CASANUEVA, Judge.
Shuzuka Yawata Mannino, the former wife, appeals an order of the circuit court dismissing her postdissolution petition to modify child custody and child support based on the circuit court's determination that it was without subject matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA).[1] We reverse.
Paul Singh Mannino, the former husband, is and has been at all times relevant to this proceeding a United States citizen and a member of the United States Air Force. Sgt. Mannino has had a lengthy overseas posting but, for purposes of the armed services, claims Florida as his home *576 state. In fact, he has not resided in Florida for many years, including the six-month period immediately preceding the filing of his petition for dissolution of marriage.
Mrs. Mannino is a Japanese citizen, currently living in New York State. She has never lived in Florida, including the six-month period preceding the filing of Sgt. Mannino's petition for dissolution of marriage, and has visited here only occasionally.
Two sons were born in Japan of their marriage, and they have lived there continuously since their birth. The sons have had occasional trips to Florida to visit their paternal grandparents.
Sgt. Mannino filed for dissolution of marriage in Florida in August 2004. In the UCCJEA affidavit filed in conjunction with the petition, required by section 61.522, he claimed Florida as the children's "home state." In January 2005 in Japan, the couple executed with all formal requisites a kyogi rikon,[2] the Japanese equivalent of an uncontested divorce. Under the terms of this Japanese divorce, Mrs. Mannino allegedly gave up her sons to Sgt. Mannino's custody and care and without any obligation on her part for their support. After execution of the kyogi rikon, and in the then still ongoing Florida dissolution proceedings, the parties entered into a marital settlement agreement in which Mrs. Mannino agreed that Sgt. Mannino would have sole parental responsibility of the boys and their primary residential custody, and Mrs. Mannino would have specified visitation.[3] In June 2005, the circuit court entered a final judgment of dissolution, incorporating the marital settlement agreement and all its terms. The court also ordered that Mrs. Mannino pay specified child support. No appeal was taken from this final judgment of dissolution.
When Mrs. Mannino began experiencing problems with visitation and other perceived violations of the marital settlement agreement, she filed a post-dissolution petition to modify child custody and child support in June 2006.[4] She also sought, under Florida Rule of Civil Procedure 1.540, relief from the child custody and parental responsibility portions of the final judgment of dissolution due to intrinsic fraud. Further, she moved for a judgment finding Sgt. Mannino in contempt for impairing visitation with her sons. Sgt. Mannino countered by filing a motion to dismiss her petition, based on lack of subject matter jurisdiction. He grounded this motion on a claim that the child custody and *577 child support portions of the Florida dissolution judgment were a nullity because the circuit court had not had in August 2004, and still did not have in 2006, jurisdiction to decide such matters because Florida was not the "home state" of the children. Because the Florida child custody decree was a nullity, he argued, that left the Japanese divorce as controlling under which Mrs. Mannino had no right to custody of or visitation with the children. He offered to return all monies constituting child support that he had received from her under the Florida dissolution judgment. After a hearing, the circuit court agreed with Sgt. Mannino's characterization of all prior proceedings, accepted his reasoning regarding subject matter jurisdiction, and dismissed Mrs. Mannino's position. We conclude that the trial court erred but not for the reasons advanced by it.
In order to nullify the child custody and support provisions set forth in the Florida dissolution judgment, Sgt. Mannino is required to attack that judgment collaterally by seeking relief pursuant to rule 12.540, which provides: "Florida Rule of Civil Procedure 1.540 shall govern general provisions concerning relief from judgment, decrees, or orders. . . ." His motion to dismiss Mrs. Mannino's postdissolution petition is an inappropriate means to achieve that end. As it stands now, that 2004 dissolution judgment still controls, not having been reversed on appeal.[5] "A judgment entered by a court which lacks subject matter jurisdiction is void and subject to collateral attack under rule 1.540 at any time.'" McGhee v. Biggs, 974 So.2d 524, 526 (Fla. 4th DCA 2008) (citing Strommen v. Strommen, 927 So.2d 176 (Fla. 2d DCA 2006))[6]; see Wolverton v. Wolverton, 760 So.2d 1092, 1092 (Fla. 2d DCA 2000) ("Absent a timely appeal, Florida Rule of Civil Procedure 1.540 is the only procedural vehicle to set aside a final judgment. . . . ").
Sgt. Mannino did not file a motion under rule 12.540 in the proceedings before the trial court attacking the child support and custody provisions of the dissolution judgment. In the absence of such a motion, the trial court erred in granting his motion *578 and in dismissing the case. See Wolverton. We caution the trial court on remand that because of the confounding factors in this case, including the Japanese kyogi rikon, the children's presence in Japan for the six months immediately preceding the filing of Mrs. Mannino's modification petition, and Sgt. Mannino's military status, it is most important that procedures for the orderly disposition of actions be followed.
Reversed and remanded for further proceedings.
STRINGER and WALLACE, JJ., Concur.
NOTES
[1] §§ 61.501-.542, Fla. Stat. (2004).
[2] A kyogi rikon is a:

[d]ivorce by consent in Japan [and] is provided for in Article 763 of the Civil Code of Japan.
The divorce is effectuated by the filing and acceptance (juri) by a local municipal official of this form (in Japanese) [illustrated on the website] containing the information required pursuant to Article 76 of the Kosekiho (Family Registration Law) and Article 764, 765 and 739 of the Civil Code.
Jeremy Morley, International Family Law  Kyogi Rikon (Consent Divorce), http://www. international-divorce.com/kyogi_rikon.htm, last accessed on March 18, 2008. See generally, Note, Japanese Family Law, 9 Stan. L.Rev. 132, 150-53 (Dec. 1956). We make no comment in this opinion on the legal effect of the parties' Japanese divorce on these proceedings because it is unnecessary to the basis of our holding.
[3] The parties' marital settlement agreement also stated that Florida law would govern and, for purposes of the UCCJEA, that Florida was the children's "home state." Otherwise it gave to Mrs. Mannino rights concerning the children's surname and dealings with future potential stepmothers, but she waived any right to alimony then or in the future.
[4] In the meantime, in August 2005, Sgt. Mannino had petitioned for modification, but Mrs. Mannino was able to defeat this petition in March 2006 with a meritorious motion to dismiss.
[5] Sgt. Mannino's claim that the court in Florida did not have subject matter jurisdiction over child custody matters at the time of the dissolution judgment presents an arguable issue. See § 61.503(7) ("`Home state' means the state in which a child lived with a parent or a person acting as a parent for at least 6 consecutive months immediately before the commencement of a child custody proceeding."); N.W.T. v. L.H.D., 955 So.2d 1236 (Fla. 2d DCA 2007) (discussing the meaning of "home state" in the context of a custody proceeding in a dependency case); Flores v. Saunders, 674 So.2d 767 (Fla. 5th DCA 1996) (discussing application of the similar "home state" provisions of the precursor to the present UCCJEA); McCabe v. McCabe, 600 So.2d 1181, 1186 (Fla. 5th DCA 1992) ("The fact that Florida may be the twins' legal residence or legal domicile does not necessarily mean that the children lived in Florida for six months as the statute defines home state for custody jurisdiction."). "`A trial court's lack of subject matter jurisdiction makes its judgments void. . . .'" N.W.T., 955 So.2d at 1238 (quoting Strommen v. Strommen, 927 So.2d 176, 179 (Fla. 2d DCA 2006)). However, that question is not currently before us but may arise on remand.
[6] But see McGhee, 974 So.2d at 526 (Farmer, J., concurring specially) (maintaining that "[t]o the extent that the real issues in this case involve jurisdiction at all, they concern case jurisdiction, not subject matter jurisdiction"); see also Judge Scott Stephens, Florida's Third Species of Jurisdiction, 82 Fla. Bar J. 11, 15, 16 (March 2008) (arguing that subject matter jurisdiction is an "allocation rule" indicating which court has authority to hear a dispute and that the "interstate child custody cases uniformly, and entirely incorrectly, frame the issue of custody over a particular child (i.e., person) as one of subject matter jurisdiction").