MARSTILLER, J.
Ioan Ciungu (“Appellant”) appeals an order of the probate court that (1) includes certain real property parcels in the Estate of Victoria Ciungu (“Estate”), (2) directs the Estate’s personal representative to issue deeds conveying the two parcels to Appellant and Melania Bulea (“Appellee”), the decedent’s children, as tenants in common and (3) partially vacates a prior order insofar as it conditioned distribution of Ap-pellee’s share of the Estate’s assets upon distribution of real property located in Romania. Appellant seeks reversal of all three rulings, arguing that Appellee did not timely move to vacate the probate court’s earlier order or timely challenge the estate inventory; that the partially vacated order was correct because the probate court had personal jurisdiction over Appellee; and that he became sole owner of the two real property parcels when his mother died for he held the right of surviv-orship under the quit claim deeds he executed conveying the properties to his parents. Finding merit only in Appellant’s argument that the probate court erred in partially vacating the prior order, we affirm the order on appeal, in part, and reverse it, in part.
Appellant and Appellee’s parents, John Ciungu and Victoria Ciungu, originally from Romania, died on February 3, 2003, and April 30, 2003, respectively. They owned property in Florida, where they were domiciled, and in Romania; both died intestate. On August 29, 2003, Appellant filed Petitions for Administration in both estates and subsequently was appointed as personal representative for both. On January 31, 2005, the probate inventory was filed and served on Appellee and her counsel; no objections to the inventory were filed. The estates have remained open since that time while Appellant and Appel-lee engaged in protracted litigation.
On February 3, 2010, following a hearing on Appellant’s petition to enforce an alleged oral agreement with Appellee concerning distribution of the property in Florida and Romania, the probate court entered an order denying the petition, but directing Appellant, as personal representative, to hold Appellee’s share of the assets in the Estate in a restricted account until she “has fulfilled her obligation to ensure legal title to the Romanian properties is properly vested in the persons entitled to receive those properties under Romanian Law.” Slightly more than a year later, on April 28, 2011, Appellee filed a Motion to Partially Vacate Order under Florida Rule of Civil Procedure 1.540(b)(4), asserting that the above-quoted provision in the 2010 order was void because the probate court lacked subject matter jurisdiction over the Romanian property. The court finally held a hearing on the motion to vacate and several others, including a motion to remove Appellant as personal representative of the estates, on January 17, 2013. At the hearing, the court also considered Appellee’s request to add two parcels of real property to the probate *293 inventory — a commercial property known as Bimini Plaza Medical Center in Bay County, Florida, and a residential property located at 103 Shadow Bay Drive, Panama City Beach, Florida. To that end, the court received into evidence two quit claim deeds executed by Appellant in 1997 conveying the two parcels to John and Victoria Ciungu, and reserving a life estate to the grantor.[1]
The order now on appeal, rendered September 24, 2013, provides, in pertinent part:
ISSUE 1: Whether parcel #33313-105-000 (Bimini Plaza) and # 32736-141000 (103 Shadow Bay Drive) are estate assets.
The plain meaning of the quit claim deeds conveying property to John Ciun-gu and wife, Victoria Ciungu on June 5, 1997 will be given effect. The conveying quit claim deeds provide that the grant- or, loan Ciungu, a/k/a/ John Ciungu quit-claimed the described property to grantees, John Ciungu and wife, Victoria Ciungu with right of survivorship between grantees and a life estate to the grantor. The court interprets the deeds to convey a life estate to loan Ciungu and a remainder interest with right of survivorship to John Ciungu and wife, Victoria Ciungu. John Ciungu’s remainder interest passed to Victoria Ciungu upon his death. Upon the death of Victoria Ciungu, the remainder interest passed to her beneficiaries, loan Ciungu and Melania Bulea in common. Accordingly, the personal representative shall within 30 days issue deeds conveying the property referred to as “Bimini Plaza Medical Center” and 103 Shadow Bay Drive to loan Ciungu, a/k/a John Ciun-gu, and Victoria Bulea [sic] as tenants in common with a life estate reserved to loan Ciungu.
ISSUE 2: Should the order entered on February 3, 2010 be partially vacated.
The February 3, 2010 order provides: “Ordered and Adjudged that the personal representative shall hold the share of the other beneficiary, Melania Bulea, in the restricted account until such time as Melania Buleas [sic] has fulfilled her obligation to ensure legal title to the Romanian properties is properly vested in the persons entitled to receive those properties under Romanian law. At that time the personal representative may take the proper steps to close these estates and make final distributionf]” “Ordered and Adjudged that should Me-lania Bulea fail to fulfill her obligation as set forth above, the personal representative may seek relief from this court to be satisfied against the property being held by the personal representative as the share belonging to Melania Bulea
The February 3, 2010 order in effect conditions the resolution of the Florida estate upon the resolution of the estate in the country of Romania. The court is persuaded by the legal authority and argument presented asserting that this court does not have jurisdiction over the estate in Romania or the legal authority to compel administration of decedent’s estate in the country of Romania. The motion to vacate is granted.
(Italics in original.)
Addressing the second ruling first, Appellant argues that Appellee’s motion to vacate under rule 1.540 was untimely because it was filed more than one year after the 2010 order was entered. He argues *294 further that, in any event, the disputed portion of the prior order was not void for lack of jurisdiction because the probate court properly acquired and exercised personal jurisdiction over Appellee, and thus, had the authority to order her to fulfill her obligations as to the Romanian property.
Appellee’s motion was not untimely. Rule 1.540(b) provides, in pertinent part:
(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; etc. On motion and úpon such terms as are just, the court may relieve a party or a party’s legal representative from a final judgment, decree, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial or rehearing; (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) that the judgment or decree is void; or (5) that the judgment or decree has been satisfied, released, or discharged, or a prior judgment or decree upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or decree should have prospective application. The motion shall be filed within a reasonable time, and for reasons (1), (2), and (3) not more than 1 year after the judgment, decree, order, or proceeding was entered or taken. ...
(Emphasis added.) By its plain terms, the one-year limit applies only to motions seeking to vacate an order “for reasons (1), (2), and (3).” Appellee’s motion asserted that- the 2010 order was void, in part, for lack of subject matter jurisdiction. Such a motion may be filed “within a reasonable time,” and nothing in the record before us demonstrates that Appellee unreasonably waited 14 months to file her motion. Indeed, “because the mere passage of time cannot make a void judgment valid, a motion to vacate a judgment as void may ‘reasonably’ be filed many years after the judgment was entered.” Johnson v. State, Dep’t of Rev. ex rel. Lamontagne, 973 So.2d 1236, 1238 (Fla. 1st DCA 2008). Essentially, motions filed under rule 1.540(b) asserting a lack of jurisdiction may be filed at any time. See Arquette v. Rutter, 150 So.3d 1259, 1260 (Fla. 5th DCA 2014); Kathleen G. Kozinski, P.A. v. Phillips, 126 So.3d 1264, 1268 (Fla. 4th DCA 2013); Mannino v. Mannino, 980 So.2d 575, 577 (Fla. 2d DCA 2008); M.L. Builders, Inc. v. Reserve Developers, LLP, 769 So.2d 1079, 1082 (Fla. 4th DCA 2000).
Although Appellee’s motion was not untimely, the provisions in the 2010 order vacated in the order on appeal were not void for lack of jurisdiction.[2] “It has long been established ... that a court which has obtained in personam jurisdiction over a defendant may order that defendant to act on property that is outside of the court’s jurisdiction, provided that the court does not directly affect the title to the property while it remains in the foreign jurisdiction.” General Electric Capital Corp. v. Advance Petroleum, Inc., 660 So.2d 1139, 1142 (Fla. 3d DCA 1995) (emphasis in original). There is no dispute that the probate court acquired personal jurisdiction over Appellee. Thus, it had authority to direct her to effect distribution of the Romanian property, even though the property lay outside the court’s *295 geographic jurisdiction. In ordering Ap-pellee to “fulfill[ ] her obligation to ensure legal title to the Romanian properties is properly vested in the persons entitled to receive those properties under Romanian law,” the probate court did nothing to directly affect title to the properties. Accordingly, the court erred by partially vacating its prior order for lack of subject matter jurisdiction, and we direct that the vacated provisions be reinstated.[3]
Finally, we find no error by the probate court in including the Bimini Plaza and Shadow Bay Drive properties in the Estate. We see nothing in the Florida Probate Code or the Probate Rules, or in case law, precluding the addition of property to the inventory of an estate that, as here, remains open. Rather, the code and rules contemplate amended and supplemental inventories. See § 738.604(2), Fla. Stat. (2003); Fla. Prob. R. 5.340(c). They also contemplate subsequent administration after an estate has been closed. See § 733.903, Fla. Stat. (2003); Fla. Prob. R. 5.460(a) (“If, after an estate is closed, additional property of the decedent is discovered ... any interested person may file a petition for further administration of the estate.”).
Further, the probate court ruled correctly as to the legal effect of the quit claim deeds[4] Appellant executed conveying the subject parcels to his parents. Appellant asserts he reserved to himself the right of survivorship, and by virtue of that right, he solely owns the properties. But the unambiguous language in the deeds does not bear his assertion out. Each deed names Appellant as grantor and conveys the property described therein “to John Ciungu and Wife, Victoria Ciungu ... hereinafter called grantees” and states:
That the said grantorf ] ... does hereby remise, release and quit-claim, with the right of survivorship between the grantees, unto the said grantees, forever, all right, title, interest, claim and demand which the said grantor has in and to the [described property].
(Emphasis added.) The deeds also state: “GRANTOR HEREIN RESERVES UNTO HIMSELF A LIFE ESTATE IN THE ABOVE DESCRIBED PROPERTY.” Nothing in the above-quoted language created a right of survivorship for Appellant. Citing to no legal authority, Appellant asserts that the reservation of a life estate made him, the grantor, also a grantee. This proposition is flatly incorrect and inconsistent with the plain language in the deeds. Appellant conveyed the fee simple (“... all right, title, interest, claim and demand which the said grantor has ... ”) to the husband and wife, who held the fee simple by the entirety subject to Appellant’s life estate. See Aderhold v. Aderhold, 983 So.2d 43, 44 (Fla. 1st DCA 2008); Saltzman v. Ahern, 306 So.2d 537, 539-40 (Fla. 1st DCA 1975). Thus, Appellant retained only a present possessory interest in .the fee simple, while John and Victoria Ciungu held the remainder interest. See Anemaet v. Martin-Senour Co., 114 So.2d 23, 26 (Fla. 2d DCA 1959) (“Predominantly it is held that a deed which conveys the fee and reserves *296 the right to use or occupancy during the grantor’s life reserves in the grantor a life estate.”). Upon the death of John Ciungu, Victoria Ciungu held the entire remainder interest in both properties, subject to Appellant’s life estate. See Berlin v. Pecora, 968 So.2d 47, 50 (Fla. 4th DCA 2007) (“Under a tenancy by the entirety, ‘[u]pon the death of one spouse, the surviving spouse continues to be seized of the whole.’”) (citation omitted). Consequently, when Victoria Ciungu died, her undivided 100 percent remainder interest in both properties passed by intestacy to her children as tenants in common. See §§ 732.103, 732.104, Fla. Stat. (2003). The probate court thus correctly ordered the personal representative to issue deeds conveying the subject properties to Appellant and Victoria Ciungu as tenants in common, subject to a life estate held by Appellant.
The order on appeal is AFFIRMED, in part; REVERSED, in part; and REMANDED to the probate court with directions to reinstate the vacated provisions in the February 3, 2010, order.
LEWIS, C.J., and BENTON, J., concur.

. On January 18, 2013, the probate court ordered Appellant removed as personal representative of the estates for cause.

. Because the probate court based its ruling on a lack of subject matter jurisdiction — a question of law — we review the matter de novo. See generally Dep’t of Revenue ex rel. Smith v. Selles, 47 So.3d 916, 918 (Fla. 1st DCA 2010).

. Appellee’s real contention seems to be with the provision in the 2010 order conditioning the distribution of her share of Estate property on the fulfillment of her obligations as to the Romanian property. Whether the probate court, as a court of equity, see generally In re Estate of Howard, 542 So.2d 395 (Fla. 1st DCA 1989), was within its authority to do so, however, is a question to have been raised on appeal from the order. The time to challenge the ruling has long passed.

. "It is well established that the construction of ... written instruments is a question of law that is reviewable de novo, unless their meaning is ambiguous.” Dixon v. City of Jacksonville, 774 So.2d 763, 765 (Fla. 1st DCA 2000).