# Supreme Court of Florida

_____

No. SC19-548
_____

**ADVISORY OPINION TO THE ATTORNEY GENERAL RE: RAISING FLORIDA'S MINIMUM WAGE.**

_____

No. SC19-736
_____

**ADVISORY OPINION TO THE ATTORNEY GENERAL RE: RAISING FLORIDA'S MINIMUM WAGE (FIS).**

December 19, 2019
**<u>CORRECTED OPINION</u>**

PER CURIAM.

The Attorney General of Florida has petitioned this Court for an advisory opinion on the validity of a proposed citizen initiative amendment to the Florida Constitution and the corresponding financial impact statement prepared by the Financial Impact Estimating Conference (FIEC). We have jurisdiction to review the initiative petition. *See* art. IV, § 10; art. V, § 3(b)(10), Fla. Const. As explained below, we approve the proposed amendment titled "Raising Florida's

Minimum Wage" for placement on the ballot but decline to review the financial impact statement because we lack jurisdiction to do so.

## PROCEDURAL HISTORY

As required by law, the Attorney General requested an opinion from this Court addressing the validity of an initiative petition titled "Raising Florida's Minimum Wage." Specifically, the Attorney General requested that we review the compliance of the proposed amendment with the single-subject requirement of article XI, section 3 of the Florida Constitution, and the compliance of the ballot title and summary with the substantive and technical requirements of section 101.161(1), Florida Statutes (2018).[1] In addition, the Attorney General requested an opinion from this Court addressing the compliance of the corresponding financial impact statement with section 100.371, Florida Statutes (2019). We invited briefing as to the validity of the initiative petition and the financial impact statement but received none. *See* art. IV, § 10; Fla. R. App. P. 9.510(c)(1). Thereafter, we directed the Attorney General and all interested parties to file briefs addressing whether this Court has jurisdiction to review the financial impact

---

1. We cite the 2018 version of section 101.161(1) because that version was in effect when the petition was submitted to the Secretary of State and when the sponsor began gathering signatures. However, this provision was not substantively amended in 2019.

statement. We received only one brief, from the Attorney General, which argues that we have jurisdiction.

## LEGAL BACKGROUND

The people of Florida have the power to propose amendments to the state constitution by initiative under article XI, section 3 of the Florida Constitution. Once an initiative petition is circulated and meets certain technical requirements, *see* § 15.21, Fla. Stat. (2019), the Attorney General is constitutionally and statutorily required to seek this Court's opinion on the validity of the petition. Art. IV, § 10; § 16.061(1), Fla. Stat. (2019). The constitution directs us to "address[] issues as provided by general law" when the Attorney General invokes our jurisdiction to review initiative petitions. Art. V, § 3(b)(10), Fla. Const.

Under the authority provided by article V, section 3(b)(10) of the Florida Constitution, and as directed by article IV, section 10, we conduct a limited review of an initiative petition. *See Advisory Op. to Att'y Gen. re Prohib. State Spending for Experimentation that Involves Destruction of a Live Human Embryo*, 959 So. 2d 210, 212, 214 (Fla. 2007). Our review does "not address the merits or wisdom of the proposed amendment," but rather, the compliance of the petition with the requirements of the Florida constitution and statutes. *Id.* at 212. (quoting *Advisory*

- 3 -

*Op. to Att'y Gen. re Fla. Marriage Prot. Amend.*, 926 So. 2d 1229, 1233 (Fla. 2006)).

Specifically, regardless of whether we receive arguments on the validity of an initiative petition, we review the petition to ensure the following: (A) that the proposed amendment "embrace[s] but one subject and matter directly connected therewith" (except when the proposed amendment limits the power of government to raise revenue), art. XI, § 3, Fla. Const., and (B) that the petition includes a ballot title and summary in compliance with the word-count, clarity, and content requirements of section 101.161(1), Florida Statutes. *See Prohib. State Spending for Experimentation that Involves Destruction of a Live Human Embryo*, 959 So. 2d at 211 n.1, 212-15.

## ANALYSIS

We first address the compliance of the proposed amendment with the single-subject rule and compliance of the ballot title and summary with section 101.161(1). Then, we turn to the question of our jurisdiction to review financial impact statements.

### A. Single-Subject Rule

This Court has held that, to comply with the single-subject rule, the proposed amendment must "manifest a 'logical and natural oneness of purpose' " and not "substantially alter[] or perform[] the functions of multiple branches" of

government.  *Prohib. State Spending for Experimentation that Involves the Destruction of a Live Human Embryo*, 959 So. 2d at 212-13 (emphasis omitted) (first quoting *Advisory Op. to the Att'y Gen. re the Med. Liab. Claimant's Comp. Amend.*, 880 So. 2d 675, 677 (Fla. 2004), and then quoting *Advisory Op. to the Att'y Gen. re Fish & Wildlife Conserv. Comm'n*, 705 So. 2d 1351, 1353-54 (Fla. 1998)).

The full text of the proposed amendment at issue, which would amend article X, section 24 of the Florida Constitution, is as follows:

ARTICLE X, SECTION 24.  Florida minimum wage.—

(c) MINIMUM WAGE.  Employers shall pay Employees Wages no less than the Minimum Wage for all hours worked in Florida.  Six months after enactment, the Minimum Wage shall be established at an hourly rate of $6.15.  <u>Effective September 30th, 2021, the existing state Minimum Wage shall increase to $10.00 per hour, and then increase each September 30th thereafter by $1.00 per hour, until the Minimum Wage reaches $15.00 per hour on September 30th, 2026.</u> On September 30th of <u>2027</u> <s>that year</s> and on each following September 30th, the state Agency for Workforce Innovation shall calculate an adjusted Minimum Wage rate by increasing the current Minimum Wage rate by the rate of inflation during the twelve months prior to each September 1st using the consumer price index for urban wage earners and clerical workers, CPI-W, or a successor index as calculated by the United States Department of Labor.  Each adjusted Minimum Wage rate calculated shall be published and take effect on the following January 1st.  For tipped Employees meeting eligibility requirements for the tip credit under the FLSA, Employers may credit towards satisfaction of the Minimum Wage tips up to the amount of the allowable FLSA tip credit in 2003.

The proposed amendment clearly addresses only one subject, raising the minimum wage, and it does not substantially alter or perform the functions of multiple branches of government. Although it may affect contracts entered into and wages paid by each branch of government, these effects are incidental to the chief purpose of the amendment, which is not to alter or perform any governmental function. *Cf. Advisory Op. to Att'y Gen. re Extend. Existing Sales Tax to Non-Taxed Servs. Where Exclusion Fails to Serve Pub. Purpose*, 953 So. 2d 471, 488 (Fla. 2007) (upholding a petition against a claim of violation of the single-subject rule where the amendment was "principally directed to the legislative branch with only incidental effects on the executive and judicial branches"). Therefore, the proposed amendment satisfies the single-subject rule.

### B. Ballot Title and Summary

Section 101.161(1) governs the ballot title and summary of proposed amendments, as follows:

> Whenever a constitutional amendment or other public measure is submitted to the vote of the people, a ballot summary of such amendment or other public measure shall be printed in clear and unambiguous language on the ballot after the list of candidates, followed by the word "yes" and also by the word "no," and shall be styled in such a manner that a "yes" vote will indicate approval of the proposal and a "no" vote will indicate rejection. . . . The ballot summary of the amendment . . . shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure. . . . The ballot title shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of.

To determine whether the ballot title and summary meet the requirements of section 101.161(1), we assess whether their language "fairly inform[s] the voter of the chief purpose of the amendment" and whether it misleads the public, keeping in mind that the ballot title and summary need to be "accurate and informative" but need not "discuss every detail or consequence of the amendment." *Prohib. State Spending for Experimentation that Involves Destruction of a Live Human Embryo*, 959 So. 2d at 214 (first quoting *Fla. Marriage Prot. Amend.*, 926 So. 2d at 1236, and then quoting *Advisory Op. to Att'y Gen. re Protect People from Health Hazards of Using Tobacco*, 926 So. 2d 1186, 1194 (Fla. 2000)).

The ballot title for the proposed amendment is "Raising Florida's Minimum Wage," and the ballot summary reads as follows:

> Raises minimum wage to $10.00 per hour effective September 30, 2021. Each September 30th thereafter, minimum wage shall increase by $1.00 per hour until the minimum wage reaches $15.00 per hour on September 30th, 2026. From that point forward, future minimum wage increases shall revert to being adjusted annually for inflation starting September 30th, 2027.

The ballot title clearly and accurately identifies the subject matter, and it complies with the word-count requirement. Likewise, the ballot summary is clear and unambiguous and complies with the word-count requirement. Indeed, the ballot summary is nearly identical to the language of the proposed amendment itself, and it explains in a straightforward and accurate manner how the proposed changes to article X, section 24 of the Florida Constitution would affect the existing system—

- 7 -

by raising the minimum wage incrementally on an annual basis to a certain point and then resuming the existing system of adjusting the minimum wage annually for inflation. *Cf. Med. Liab. Claimant's Comp. Amend.*, 880 So. 2d at 679 (upholding a ballot summary that came "very close to [simply] reiterating the briefly worded amendment"). We find no basis to reject the proposed ballot title and summary under section 101.161(1).

## C. Financial Impact Statement

We previously concluded, in *Advisory Opinion to the Attorney General re Referenda Required for Adoption*, 963 So. 2d 210, 210 (Fla. 2007), that we have jurisdiction to review financial impact statements. We now conclude that this determination was clearly erroneous and, because we cannot exercise jurisdiction that the constitution does not provide, recede from it.

Our jurisdiction is defined in article V, section 3 of the Florida Constitution. The only provision of article V, section 3 that has been argued as providing jurisdiction to review financial impact statements is section 3(b)(10), which provides that this Court "[s]hall, when requested by the attorney general pursuant to the provisions of Section 10 of Article IV, render an advisory opinion of the justices, addressing issues as provided by general law." Because article V, section 3(b)(10) references the portion of the constitution that requires the Attorney General to seek our review of initiative petitions, art. IV, § 10, and that provision

- 8 -

in turn references the provision of the constitution recognizing the right to file an initiative petition, art. XI, § 3, article V, section 3(b)(10) is best presented by beginning with the portion of the constitution addressing initiative petitions, proceeding to consider the portion of the constitution directing the Attorney General to seek our opinion on initiative petitions, and then reviewing the text of article V, section 3(b)(10).

Article XI, section 3 sets forth the power of the people to propose amendments to the constitution by initiative in these terms:

> The power to propose the revision or amendment of any portion or portions of this constitution by initiative is reserved to the people, provided that, any such revision or amendment, except for those limiting the power of government to raise revenue, shall embrace but one subject and matter directly connected therewith. It may be invoked by filing with the custodian of state records a petition containing a copy of the proposed revision or amendment, signed by a number of electors in each of one half of the congressional districts of the state, and of the state as a whole, equal to eight percent of the votes cast in each of such districts respectively and in the state as a whole in the last preceding election in which presidential electors were chosen.

Article IV, section 10 sets forth the Attorney General's duty to seek this Court's review of an initiative petition, as follows:

> The attorney general shall, as directed by general law, request the opinion of the justices of the supreme court as to the validity of any initiative petition circulated pursuant to Section 3 of Article XI. The justices shall, subject to their rules of procedure, permit interested persons to be heard on the questions presented and shall render their written opinion no later than April 1 of the year in which the initiative is to be submitted to the voters pursuant to Section 5 of Article XI.

As noted above, article V, section 3(b)(10) defines this Court's jurisdiction with respect to a request by the Attorney General under article IV, section 10, by stating that this Court "[s]hall, when requested by the attorney general pursuant to the provisions of Section 10 of Article IV, render an advisory opinion of the justices, addressing issues as provided by general law." Notably, none of the three quoted provisions mention financial impact statements.

Financial impact statements are addressed in a different provision of the constitution, article XI, section 5(c). Article XI, section 5(c) states, "The legislature shall provide by general law, prior to the holding of an election pursuant to this section, for the provision of a statement to the public regarding the probable financial impact of any amendment proposed by initiative pursuant to section 3 [of article XI]."

The Legislature has arranged for the provision of financial impact statements to the public within section 100.371(13). Section 100.371(13) creates the FIEC and requires it to analyze the financial impact of a proposed amendment and prepare a statement of that financial impact within a certain time frame of receipt of the proposed amendment from the Secretary of State. § 100.371(13)(a), (c). The statute contemplates that the financial impact statement will be placed on the ballot with the related proposed amendment unless it is not judicially approved. § 100.371(13)(a), (c)3. The statute dictates the length and content of the financial

- 10 -

impact statement and requires the FIEC to submit the financial impact statement to the Attorney General. § 100.371(13)(a), (c)2. The statement must be "clear and unambiguous," no more than 150 words, and address "the estimated increase or decrease in any revenues or costs to state or local governments, estimated economic impact on the state and local economy, and the overall impact to the state budget resulting from the proposed initiative." § 100.371(13)(a), (c)2.

In the scheme the Legislature enacted for the preparation and publication of financial impact statements, the Legislature expressly contemplated this Court's review of such statements. § 100.371(13)(c)3., (e)1., 2.; *see also* § 16.061(3) ("Any fiscal impact statement that *the* court finds not to be in accordance with s. 100.371 shall be remanded solely to the Financial Impact Estimating Conference for redrafting." (emphasis added)).[2] However, that contemplation does not, in itself, give us jurisdiction. Although article V, section 3(b)(10) directs this Court to review issues provided by general law, that direction does not open the door for this Court to exercise original jurisdiction to review any issue provided by general law as to any subject. That direction pertains to issues concerning the validity of

---

2. It is not clear, however, that the Legislature contemplated that this Court's review authority be exclusive. *See* § 100.371(13)(c)2. ("Any financial impact statement that *a* court finds not to be in accordance with this section shall be remanded solely to the Financial Impact Estimating Conference for redrafting." (emphasis added)).

initiative petitions, as that alone is the subject matter of both article V, section (3)(b)(10) and article IV, section 10. Therefore, article V section 3(b)(10) does not grant this Court original jurisdiction to review issues pertaining to financial impact statements unless a financial impact statement is properly considered a part of an initiative petition.

This point was well-explained by Justice Bell in his dissent from *Referenda Required for Adoption*:

> [W]hile the attorney general must request the advisory opinion as prescribed by general law, our constitution expressly limits the subject matter of such a request "to the validity of an initiative petition circulated pursuant to section 3 of article XI." [Art. IV, § 10.] This being the case, this Court's jurisdiction is limited to the validity of the initiative petition. And, if the validity of the petition is not dependent upon the validity of the financial impact statement, this Court does not have jurisdiction to render an opinion on the validity of the financial impact statement. . . . [N]othing in our constitution or our prior precedent suggests that the validity of an initiative petition is dependent upon the financial impact statement.

963 So. 2d at 216-17 (Bell, J., dissenting) (footnote omitted). Not only does the constitution not make a financial impact statement a part of an initiative petition, neither does current statutory law. The Attorney General properly concedes these points.

Justice Bell accurately explained the absence of a constitutional requirement that an initiative petition contain the financial impact statement or have its validity tied to the financial impact statement:

> [N]othing in the plain language of our constitution suggests that the validity of the petition, for purposes of section 3 of article XI, is dependent upon this Court's determination that the financial impact statement is also valid. Section 3 of article XI makes no reference to a financial impact statement as a part of the initiative petition. It certainly does not require that a proposed financial impact statement accompany the initiative petition. And section 10 of article IV does not authorize the attorney general to request an advisory opinion regarding the validity of the independent financial impact statement.

*Id.* at 218 (Bell, J., dissenting) (footnote omitted).

As for statutory law, our review of the current statutes governing initiative petitions and financial impact statements confirms that the Legislature has not made the financial impact statement a part of an initiative petition. To implement article XI, section 5's directive to arrange for the provision of a financial impact statement to the public, the Legislature created a public entity, the FIEC, that is solely responsible for that task and has not required the person or group sponsoring an initiative petition to include that statement in the petition. *See* §§ 15.21(2), 100.371(13), 101.161(2), Fla. Stat. (2019); *see also Referenda Required for Adoption*, 963 So. 2d at 217 n.7 (Bell, J. dissenting) ("The financial impact statement is not prepared by the sponsor and is not signed by any electors."). The sponsor's responsibility in preparing an initiative petition is to establish the text of the proposed amendment and create a ballot summary and ballot title, which the sponsor submits to the Secretary of State for approval before circulating for signatures. §§ 15.21(2), 100.371(2), 101.161(2). In fact, the FIEC has no

responsibility to prepare a financial impact statement until after the sponsor has filed the initiative petition with the Secretary of State and the Secretary of State has forwarded it to the FIEC. § 100.371(13)(a).[3] Given that the initiative petition must be filed before the FIEC has any responsibility to create a financial impact statement, and that the sponsor of the initiative petition has no responsibilities with respect to the financial impact statement, the initiative petition and financial impact statement can only be considered separate documents.

Because a financial impact statement is not an initiative petition and does not constitute any part of an initiative petition under the Florida Constitution or under the system the Legislature has created for the preparation and publication of these separate documents, any issues pertaining to the financial impact statement fall outside the scope of direct review authorized by article V, section 3(b)(10). While those issues are "provided by general law," they are not within the subject

---

3. The Legislature has authorized the Secretary of State to adopt rules prescribing the style and requirements of a form for obtaining signatures in support of a proposed constitutional amendment by initiative petition. § 100.371(2). That form in its completed state is properly considered the petition. *See* Fla. Admin. Code R. 1S-2.009(1). It does not require a financial impact statement or provide any space for one. *See* Fla. Admin. Code R. 1S-2.009(2) (referencing Form DS-DE 19, available at https://www.flrules.org/gateway/reference.asp?No=Ref-04015 (last visited December 12, 2019)). After a petition form is approved by the Secretary of State for circulation, "[n]o person or entity other than the sponsoring political committee of the previously approved form can submit a change or changes to the previously approved petition form." Fla. Admin. Code R. 1S-2.009(6).

matter addressed in article V, section 3(b)(10).  For these reasons, we do not have original jurisdiction to review financial impact statements.

Having reached this conclusion based on the plain language of the constitution, and recognizing that this Court does not create its own jurisdiction, but rather exercises the jurisdiction provided by the constitution, we are not at liberty to adhere to our precedent  Although the Legislature has the authority to revise the statutes to provide for review in a court not constrained by our constitutionally limited original jurisdiction,[4] or perhaps to make a financial impact statement a component of an initiative petition, which would change our jurisdictional analysis, we cannot exercise subject matter jurisdiction that we do not have.  To do so would be to engage in an action that is a nullity.  *See Mannino v. Mannino*, 980 So. 2d 575, 577 (Fla. 2d DCA 2008); *Fedan Corp. v. Reina*, 695 So. 2d 1282, 1283 (Fla. 3d DCA 1997).

---

4. Obviously, our decision today does not preclude a challenge to a financial impact statement in circuit or county court, by declaratory judgment action under current law.  However, although we see no reason why this alternative would not be available under current law, *see* § 86.011, Fla. Stat. (2019) (recognizing declaratory judgment actions and the jurisdiction of circuit and county courts to adjudicate them), we note that that issue is not before us and express no definite opinion on the validity of such an action.  *See also Referenda Required for Adoption*, 963 So. 2d at 219 n.8 (Bell, J., dissenting) (suggesting that a financial impact statement may be reviewed by either circuit or county courts as courts of original jurisdiction and noting section 100.371's statement that "[a]ny financial impact statement that *a court* finds not to be in accordance with this section shall be remanded solely to the [FIEC]").

# CONCLUSION

For the foregoing reasons, we conclude that the initiative petition and proposed ballot title and summary for the proposed amendment "Raising Florida's Minimum Wage" meet the legal requirements of article XI, section 3 of the Florida Constitution and section 101.161(1). Accordingly, we approve the amendment for placement on the ballot. We express no opinion on the validity of the financial impact statement.

It is so ordered.

CANADY, C.J., and POLSTON, LABARGA, LAWSON, and MUÑIZ, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

Two Cases:

Original Proceedings – Advisory Opinion – Attorney General

Ashley Moody, Attorney General, and Edward M. Wenger, Chief Deputy Solicitor General, Amit Agarwal, Solicitor General, and Christopher J. Baum, Deputy Solicitor General, Tallahassee, Florida,

    for Petitioner

Jon L. Mills of Boies Schiller Flexner LLP, Miami, Florida, John B. Morgan of Morgan and Morgan, P.A., and Andrew M. Starling, Orlando, Florida,

    for Florida for a Fair Wage, an interested party